IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAY 0 1 2001

Gerald Simonsen, and in behalf
of Paulette Simonsen, a minor,
ILSE SIMONSEN
CHRISTINE SIMONSEN
PAMELA SIMONSEN

Plaintiffs

**01C 3081**

CHIEF JUDGE ASPEN

MAGISTRATE JUDGE ROSEMOND

V.

Chicago Board of Education, and
individuals in their official and individual
capacities under color of law, Paul Vallas,
Marilyn Johnson, Carol Gearring, Jose
Rodriguez, Cheryl Nevins, Sharon Bailey
Gwen Smith, Karina Bermejo, James Ciesil and
Carlos Ponce          Defendants

**FILED**
APR 30 2001
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# COMPLAINT

NOW COMES PLAINTIFFS, Gerald Simonsen, Ilse
Simonsen, Christine Simonsen, Pamela Simonsen Paulette
Simonsen and complains of the Defendants
Chicago Board of Education, Paul Vallas, Marilyn Johnson,
Carol Gearring, Jose Rodriguez, Cheryl Nevins, Sharon
Bailey, Gwen Smith, Karina Bermejo, James Ciesil and
Carlos Ponce violated the constitutional rights
and Civil Rights guaranteed under the
Fifth Amendment, Fourteenth Amendment

1

and the Civil Rights Act of 1964, Civil Rights Act
of 1991, including Title VII rights and violations,
42 U.S.C. Section 2000(e) et. sq., 42 U.S.C. § 1981,
1983, 1985, 1986 and 29 U.S.C § 621, 623 et sq.
This action for redress of unconstitutional procedures,
violation by commission and/or omission of the
Defendants, damages, and entry of Preliminary
Injunction by this Honorable Court. In support
of their Complaint Plaintiffs states as follows:

## Jurisdiction

1. Jurisdiction is conferred on this Court by
   28 U.S.C. Section 1343.
2. Venue is proper under 28 U.S.C Section 1331.
3. Plaintiffs reside within the judicial district.
4. Defendant Board of Education is an Illinois
   municipal corporation.
5. Individual defendants named in their official
   and individual capcities are at relevant
   time under the color of law.

## COUNT 1

6. This action is brought by Defendants violations
   of constitutional guaranteed due process rights
   to Gerald Simonsen's protected property by the
   United States Constitution, the Fifth Amendment

2

14th Amendment and 42 U.S.C. § 1981, 1983 causing great harm and suffering to each and all Plaintiffs.

7. Defendants Vallas and Johnson are by custom and practice policy makers of the Board.

8. Plaintiff Gerald Simonsen has been employed by the Board of Education since 1977.

9. Plaintiff Gerald Simonsen has acquired tenure and property rights pursuant to Illinois law and may not be dismissed without sufficient cause.

10. With negligence the Board adopted a Warning Resolution against Gerald Simonsen in April, 1999. (Resolution attached hereto as Exhibit 1)

11. The Warning Resolution against Gerald Simonsen used untrue and false reason as written to discipline Simonsen.

12. In May, 1999 Gerald Simonsen informed the Board that their Resolution of April was untrue and false. No corrective action was taken.

13. The Board's Progressive Discipline Policy is vague and unequally used in an arbitary manner.

14. Board of Education policy allows the chief administrator the authority to suspend up to 30 days or less.

15. Board of Education knowingly violates their own policy with Gerald Simonsen unpaid suspension lasting more than 480 days without cause (Board's policy attached hereto as Exhibit 2)

16. Gerald Simonsen's suspension without paying lasting nearly seventeen months and ongoing has caused great harm to each and all Plaintiffs.

17. The Board of Education was informed, repeatedly of their policy violations and constitutional violations toward tenured employees, yet took no corrective action.

18. Board failure to take corrective action to their unlawful acts are conspicuous and oppressively harmful toward Plaintiffs.

19. Board policy makers view teacher dismissals as needed political and economic policy. Dismissals of teachers are sham evidence of higher standards practiced by policymakers for teachers.

20. From 1991 to 1995 the Chicago Board of Education dismissed less than 30 teachers, current policy makers from 1996 to 2000 have dismissed more than 400 teachers.

21. Individual defendants named in their official and individual capacities acted under color of law, willfully performed, knowingly aided in the deprivation of Gerald Simonsen property rights causing irreparable harm and emotional suffering to each and all Plaintiffs.

22. Policymakers reckless indifference and malice has caused irreparable harm and emotional suffering to each and all Plaintiffs

23. Plaintiffs Gerald, Ilse, Paulette and Christine became homeless due to the negligence of each and all Defendants.

24. Plaintiff Pamela Simonsen due to the negligence of each and all Defendants has been denied Court ordered child support due to the property deprivation Knowingly with reckless indifference of the Defendants.

25. In April, 1999 Defendant Gearring placed false and baseless discipline charges against Gerald Simonsen as retaliation for Simonsen's role on the Hendricks Local School Council.

26. In May 1999 Defendant Gearring held a sham hearing on discipline charges of April, 1999. Hearing was third hearing brought by Gearring. Results of sham hearing was 15 day suspension without pay for Simonsen, causing great harm and suffering to all the Plaintiffs.

27. In June 1999 Defendant Gearring recommended Gerald Simonsen's termination.

28. In June 1999 Law Department directed by Defendant Johnson started to prepare for Plaintiff Gerald Simonsen's discharge.

29. In answer to EEOC complaint in 1998, Law Department denied the charges of Gerald Simonsen rather than seek the truth.

5

30. Defendant Gearring ignored Union grievances of Plaintiff Gerald Simonsen causing all to be appealed.

31. In June 1999 Board adopted a second Warning Resolution which reasons stated were not true. Defendant Johnson approved Warning, and Defendant Vallas recommended Warning all as a pretext to dismiss Gerald Simonsen. (Resolution attached hereto as Exhibit #3)

32. In July 1999 Gerald Simonsen informed the Board, with Vallas, Johnson and Rodriguez in attendance, that the Warning was based on false reasons and that Defendant Gearring was discriminating against him and using harassment. The Board took no corrective action.

33. Plaintiff Gerald Simonsen has informed the Board by oral presentations at Board meeting which are all video taped with edited versions being shown of cable television, and informed the Board with numerous letters. All attempts to correct mistreatment and unlawful conduct by the Board was ignored.

34. On September 2, 1999 Defendant Nevins acted as a hearing officer regarding Union grievances and an appeal of the 15 day suspension given Plaintiff Gerald Simonsen.

35. The hearing was a sham with Plaintiff Gerald Simonsen having no chance of not being suspended, nor of fair grievance decision, on September 2, 1999 before Nevins.

6.

36. On September 2, 1999 while Defendant Nevins was the hearing officer, Vallas however made the decision to deny all grievances and Defendant Ponce made the decision to deny the suspension appeal. Neither Vallas, nor Ponce attended the hearings. (Decisions of Vallas and Ponce attached as Exhibit #4)

37. At the September 2, 1999 grievance hearing Defendant Gearring gave false testimony which Nevins elected to believe without any effort to seek the truth, which was easily available.

38. On October 12, 1999 Defendant Ponce sent his appeal decision to Plaintiff Gerald Simonsen at 2:40 p.m while Simonsen was teaching his class. Decision was suspension to begin the next morning.

39. On November 3, 1999 Plaintiff Gerald Simonsen took a sick day allowed under the Board-Union Agreement. This sick day was unfairly written up as a dismissal charge. Other teachers were not charged by Vallas nor Gearring.

40. On November 4, 1999 Defendant Rodriguez sent a representative to remove Gerald Simonsen from his teaching duties. Nor could Simonsen enter his classroom causing great embarrassment to Plaintiff Simonsen.

41. On November 9, 1999 Plaintiff Gerald Simonsen was removed from Hendricks school and sent to the Region Office with no duties.

42. On November 10, 1999 Gerald Simonsen spoke with and informed Defendant Rodriguez of the false actions of Defendant Gearring. Rodriguez took no corrective action

43 On November 12, 1999 Defendant Vallas approved dismissal charges and specifications with a hearing scheduled for December 6, 1999. (Vallas's letter of November 12, 1999 is attached as Exhibit #5)

44 Defendant Vallas lacks the authority to approve dismissal charges under ILCS 105 5/34-85. Illinois law requires that the Board of Education approve dismissal charges. This is well established by the Illinois Supreme Court. Vallas approved charges that were not sufficient to dismiss a tenured teacher.

45. On November 17, 1999 Gerald Simonsen was notified of Vallas's charges and on November 18, 1999 Simonsen received a letter from Defendant Nevins along with a copy of Board policy #95-1025-PO1 informing Simonsen of the pre-suspension hearing and the procedures of the Board of Education. (Nevins letter attached hereto as Exhibit #6)

46 The pre-suspension hearing was held on November 30, 1999. The hearing was taped. Vallas did not appear at the hearing. The hearing was

8

a Sham, Board policy was not followed, This violates Illinois law that the Board would violate their own policy. Defendant Bailey acted as the Hearing Officer. The charges were not explained as required, even though Gerald Simonsen requested an explanation. Bailey was not impartial, as she had many contacts with Defendant Gearring prior to the hearing.

47. At the pre-suspension hearing on November 30, 1999 Gerald Simonsen was not allowed to tell his side of the matter relevant to his defense. Simonsen was not allowed to bring written evidence for his defense.

48. At the pre-suspension hearing on November 30, 1999 the Board presented no witnesses, nor any evidence that the charges were true.

49. At the pre-suspension hearing on November 30, 1999 the Board did not provide names of any persons bring the charges that Vallas approved.

50. The Board's failure to have an impartial Hearing Officer, not explain charges nor evidence that the Board had showing truth of charges, nor witnesses, nor witnesses statements, nor let Simonsen explain his defense are constitutional violations of due process, before deprivation of property that is required and well established.

9

51. The decision to suspend Gerald Simonsen without pay was based on the November 30, 1999 hearing which Vallas did not attend. The hearing officer Defendant Bailey did not issue a decision

52. The decision to suspend pending dismissal by Vallas was not due process required to be given a tenured teacher according to both state and federal law, well established prior to November 1999. The Board's decision to allow Vallas the authority to suspend was with reckless indifference to employees, including Gerald Simonsen and unlawful.

53. Defendant Bailey refused to take evidence into the record for Simonsen's defense. This purposeful refusal was deliberate and according to Board custom and practice.

54. Defendant Bailey was influenced by her working under the power of Defendant Vallas.

55. Union's position was charges ~~in sufficient~~ were insufficient.

56. At the hearing Gerald Simonsen denied all charges Simonsen denied all specifications. The Board ignored all of Simonsen's testimony. The Board's erroneous employment decision has caused great suffering to all and each Plaintiff.

10

57. Decision to suspend without pay Gerald Simonsen was Dated December 6, 1999, delivered to Simonsen on December 7, 1999 (Vallas's decision is attached hereto as Exhibit 6) No appeal was allowed.

58. No hearing was held on December 6, 1999 as scheduled by Vallas's letter of November 12, 1999 (See Exhibit #5)

59. Some of the charges for dismissal were regarding pedagogial issues which according to State law and the Board's own policy can not be used for suspension without following the procedures of ILCS 105 5/24A. The Board Knowingly violated this law. (Policy statement attached as Exhibit #7)

60. ILCS 105 5/34-85 requires mandatory 5 days for Board to send notice to State Board of Education, and schedule a hearing within 30 days of approving charges by the Board.

61. The Board of Education never adopted the charges against Gerald Simonsen, the decision was made by Vallas violating State law. This violation is custom and practice of Board, causing many teachers to be dismissed illegally.

62. Vallas violated the law when he did not send notice to the State until 47 day after approving charges, which he had no legal authority to approve which is well established at relevant time. (Vallas's late letter attached) as Exhibit # 8

63. State law requiring a hearing within 30 days was deliberately delayed by the Board until almost 250 days after charges were approved. Causing great harm and irreparable suffering to all the Plaintiffs. The delay was willful by the Board as were other delays of two, three and five months between hearing dates. (Hearing Officer's letter is attached hereto as Exhibit 9)

64. Defendant Johnson wrote the <u>Sun-Times</u> that nearly 100 teachers have resigned rather than go through the dismissal process. This is because of the constitutional violations placed upon the process intentionally by the Board.

65. At all times relevant Board, Vallas, Johnson, Bermejo and Ciesil knew their actions were illegal and done to cause harm.

66. Many times Gerald Simonsen spoke at Board meetings to remind the Board that he was not gulity of their charges. The meetings were video taped and played on cable television. The Board took no corrective action.

67. In December of 1999 Simonsen informed the Board, Vallas and Johnson that due process was denied at their hearing. Vallas told Simonsen to tell the State Hearing Officer of the violation. The Board, Vallas, Johnson took no corrective action.

12

68. Many times Gerald Simonsen informed the Board of the irreparable harm they were causing each and all Plaintiffs, The Board with reckless indifference took no action.

69. In July 2000 the Board dropped specifications #3 and #4 from their charges as there was no proof to support these untrue charges. Charges which were not sufficient in the first place were now even less sufficient with these two serious specifications dropped.

70. Board President made comment at public meeting that specification #3 and #4 were very serious, Gerald Simonsen responded that they were untrue.

71. After dropping the serious specifications Gerald Simonsen informed the Board that they correct their mistakes and drop the other untrue specifications. The Board took no corrective action.

72. The Board has repeatedly sought to deny a fair hearing before the State Board of Education. Defendant Gearring and Smith have given false testimony that they knew was false under oath.

73. Defendant Bermejo and Ciesil knew or should have known that false testimony under oath was illegal and took no corrective action.

13

74. Defendants Bermejo and Ciesil took no corrective action to testimony they knew or with reckless indifference sought not to know that Board evidence was perjury. Plaintiff Gerald Simonsen informed both Board attorneys on the record of the perjury

75. Defendant Bermejo gave false information to the Hearing Official to cause harm to Plaintiff Gerald Simonsen.

76. To prevent a full and fair hearing the Board requested and received a Protective Order so that Plaintiff Gerald Simonsen could not subpoena Board President Chico, Vallas, Rodriguez, Bailey, Nevins, or Ponce plus several other Board employees.

77. A fair hearing is being denied because Vallas approved the charges in violation of State law and Rodriguez removed G. Simonsen from teaching and than removed G. Simonsen from the school without cause.

78. The Board knew of the Hearing Officer's conflict of interest, double standards against Gerald Simonsen and highly questionable rulings of law, and took no corrective action.

79. In November of 2000 a decision in the Circuit Court of Cook County stated Gerald Simonsen was not guilty of misconduct and could receive unemployment benefits. (Court Decision is attached hereto as Exhibit # 10) This decision was based on Vallas's charges.

80. In December 2000 Gerald Simonsen informed the Board that the Judge's decision found no misconduct by Simonsen. The Board took no corrective action.

81. The two highest policymaker refused to testify at Gerald Simonsen's Administrative hearing when President Chico and Defendant Vallas responded to Simonsen request that they give testimony of what they know about the charges. The reason they refused to testify is that neither policymaker knows anything about the truth of the charges. They do know that Defendant Gearring and they also know that a Principal of a school does not have the authority by law to seeking dismissal only the Board of Education by ILCS 105 5/34-85. The charges should be dismissed.

82. Board President Chico and Defendant Vallas have both explained to Gerald Simonsen that Gearring wrote the charges and Rodriguez approved. Again a violation of state law and case law.

83. The Board with malice and reckless indifference to the harm being caused to all Plaintiffs took no corrective action.

84. In January 2001 Simonsen's Demand letter was refused. (Copy of letter is attached hereto as Exhibit #10)

85. The Board Knew of their error bring the charges against Plaintiff Gerald Simonsen and willfully refused to take corrective action causing Plaintiff Paulette Simonsen to become homeless with other Plaintiffs beause of her father's adverse employment status. Paulette must travel 45 miles, one way to attend her high school causing great harm and suffering for a sixteen year old.

WHEREFORE, Plaintiffs prays that this Honorable Court:

A. Enter judgment in their favor and against each and all of the Defendants, as may be proven at trial.

B. Award compensatory damages

C. Award punitive damages

D. Award actual damages and interest and benefits

E. Award back salary from the end of thirty days after suspensions, as Vallas was without authority to suspend more than thirty days.

F. Preliminary Injunction relief to immediate salary status as suspended with pay, or to former teaching position, immediate without harassment

G. Award front pay in lieu of former teaching position.

H. Order all deragatory references to Gerald Simonsen removed from all Board files or records, including the State Board of Education.

I. Order Board of Education to stop unlawful employment actions toward employees of the Board.

J. Order State Board of Education Administrative Hearing to conclude based on Illinois law of res judicata, and federal law of res judicata and double judicial hearings wasting taxpayers' money.

K. Order Board to return unjust suspension salary taken from Gerald Simonsen without cause.

L. Order Board to pay Gerald Simonsen for lost salary opportunity to coaching salary and summer school salary, with interests and benefits.

M. Order Board to notify other tenured teachers who were discharged through unlawful actions of the Board or tenured teachers who resigned under threat of unlawful actions, or other employees so situated.

N. Award Pro se attorney fees warranted in this case.

## COUNT II

86  Plaintiffs realleges and incorporates by reference Paragraphs 1-85 of Count I as Paragraphs 1-85 of Count II

87  Board of Education and named individual defendant under color of law took actions which were deliberate and willful causing harm to Plaintiff Gerald Simonsen liberty rights to his chosen profession without due process in violation of constitutional rights guaranteed by the United States Constitution, 4th, 5th and 14th Amendments and 42 U.S.C. § 1981, 1983

88  Defendants, each and all, damaged Plaintiff Gerald Simonsen reputation without cause and knowing brought false discipline causing great harm to each and all Plaintiffs, which is ongoing.

89  Defendant Vallas had authority to suspend 30 days by Board policy and ILCS 105 5/34-85.

17

90. Board of Education Warning Resolutions were given to Plaintiff Gerald Simonsen without cause except to damage Simonsen's rights to personal choices of lawful conduct not required of other teachers & employees of Board.

91. Board of Education's false and baseless, not sufficient under Illinois law, nor case law, charges brought to the State Board of Education has foreclosed Plaintiff Gerald Simonsen being allowed to continue in the teaching profession as he has since 1977.

92. Board President Chico's comments to go work at other school districts were spoken with malice and reckless indifference, as Board charges foreclosed those choices available to Plaintiff Gerald Simonsen causing harm and suffering to each and all Plaintiffs.

93. Defendants each and all worked to deprive the quality of life for each and all Plaintiffs by actions known to be unlawful, and were informed their actions were unlawful, without taking corrective actions.

WHEREFORE, Plaintiffs prays that this Honorable Court:

A. Enter judgment in their favor and against each and all of the Defendants as may be proven at trial.

B. Award compensatory and punitive damages

C. Award all actual damages with interest and benefits

18

D. Preliminary Injunction relief to immediate status as <u>suspended with pay</u> or to former teaching position, immediate and without harassment

E. Award back salary from 30 days after the start of unpaid suspension as Vallas was without authority to suspend more than 30 days.

F. Award front pay in lieu of former teaching position

G. Order all deragatory references to Gerald Simonsen removed from all Board files and records, including the State Board of Education

H. Order Board of Education to stop unlawful employment actions towards employees of the Board

I. Order State Board of Education Administrative Hearing to conclude based on Illinois law of "res judicata" and federal law of "res judicata" and double judicial hearings wasting tax money

J. Order Board to return unjust suspension salary taken from Gerald Simonsen without cause.

K. Order Board to pay Gerald Simonsen for lost salary opportunity to coaching salary and summer school salary with interest and benefits.

L. Order Board to notify other tenured teachers who were discharged through unlawful actions of the Board or tenured teachers who resigned under threat of unlawful actions, or other employees so situated.

M. Award Pro Se attorney Fees warranted in this case.

## COUNT III

94. Plaintiffs realleges and incorporates by reference Paragraphs 1-93 of Count I and Count II

as paragraphs 1-93 of Count III,

95. Defendant Board and each and all individual defendants under color of law knowingly denied Plaintiff Gerald Simonsen's due process rights to equal protection guaranteed by the 14th Amendment to the United States Constitution and by 42 U.S.C § 1981, 1983 with malice and forethought

96. All Defendants singled out Plaintiff Gerald Simonsen for discipline without cause and their actions of reckless indifference caused great harm and suffering to each and all Plaintiff

97. Board of Education when aware of due process violations of constitutional rights of Plaintiff Gerald Simonsen, and of their own internal Discipline Policy took no corrective action of knowing harmful effects towards Plaintiffs

98. Defendants named in their official and individual capacities under color of law acted with reckless indifference of due process rights of equal protection under law acted through acts of commission and/or omission causing each and all Plaintiffs great harm and suffering which is ongoing.

99. Board of Education knew or should have known of false charges and false sworn testimony by Board employees at State Administrative Hearing,

· which was also given to internal Hearing
· Officer at Union grievance and Union mediation
hearing causing false decisions from the
reviewing policymaker Defendant Vallas.

100. Knowingly condoning false information and
false sworn testimony without corrective
actions of policy makers denies equal
protection to Plaintiff Gerald Simonsen which
was known to the Board or should have been known

WHEREFORE, Plaintiffs prays that this Honorable Court

A. Enter judgment in their favor and against each
and all of the Defendants as may be proven at trial.

B. Award compensatory and punitive damages.

C. Award actual damages with interest and benefits,
including coaching salary, summer school salary and
other lost opportunities of salary

D. Award back salary immediate from thirty days
of start of suspension of December 7, 1999 as
Vallas is without authority, action must be by Board.

E. Preliminary Injunction relief to immediate salary
status as suspension with pay or to former
Teaching position, immediate without harassment.

G. Award front pay in lieu of former teaching position.

H. Order all derogatory references to Gerald Simonsen
removed from all Board files or records, including
the State Board of Education.

I Order Board of Education to stop unlawful employment
actions toward employees of the Board.

J. Order State Board of Education's Administrative Hearing to end based on doctrine of "res judicata" of state and federal policy to prevent wasting tax money,

K. Order Board of Education to return unjust suspension salary taken from Gerald Simonsen.

L. Order Board of Education to notify any tenured teacher who was discharged by the Board through unlawful actions or those teachers that resigned under threat of unlawful action.

M. Award Pro Se attorney fees warranted in this case.

# COUNT IV

101 Plaintiffs realleges and incorporates by reference paragraphs 1-100 of Counts I, II, III as Paragraphs 1-100 of Count IV.

102 Defendant Gearring's retaliation for her low rating from the Hendrick Local School Council was to bring untrue discipline against Gerald Simonsen in April of 1999 in violation of 42 U.S.C. § 1981, 1983 and Title VII of the Civil Rights Acts of 1964 and 1991.

103. The Board of Education Warning Resolution in April, 1999 was in retaliation against Plaintiff Gerald Simonsen for filing an EEOC complaint in 1998.

22

104 Failure to drop charges at State hearing is the deliberate retaliation against Gerald Simonsen by the Board and causing irreparable harm to all Plaintiffs

105. Board's Discipline Policy is so arbitrary that it allows for individuals working under color of law to retaliate without worry of actions of policy makers,

106 Board's decision to <u>not accept</u> a decision favorable to Gerald Simonsen from the State Hearing Officer and that the Board will appeal up to the Appellate Court of Illinois so as not to reinstate Simonsen to his lawful teaching position is retaliation for the public statements made at Board of Education meetings.

107. The Board can give no reason but pretext for the adverse actions placed upon Gerald Simonsen causing irreparable harm to all Plaintiffs.

108. Defendants Gearring continued to falsely testify at the State hearing was to re-taliate for public comments at Board meetings.

109 In March 2001 Plaintiff Gerald Simonsen filed a Complaint with EEOC. EEOC stated Right to Sue letter has been mailed, not delivered as yet.

WHEREFORE, Plaintiffs prays that this Honorable Court;

A. Enter Judgment in their favor and against each and all of the Defendants as may be proven at trial.

B. Award actual damages with interest and benefits.

C. Award compensatory and punitive damages.

D. Preliminary Injunction relief to status as suspended with pay or former teaching position.

E. Award back salary from 30 days after the start of suspension as Vallas without authority to suspend more than 30 days.

F. Award front pay in lieu of former teaching position

J. Order State Board of Education Administrative Hearing to end based on "res judicata" doctrine in state and federal law to prevent tax waste,

K. Order Board of Education to return unjust suspension salary taken from Plaintiff Gerald Simonsen

L. Order Board of Education to notify any tenured teacher who were discharged by the Board through unlawful actions or to teacher who resigned under threat of unlawful action.

M. Award Pro Se attorney fees warranted in this case

24

# COUNT V

110. Plaintiff's realleges and incorporates by reference Paragraphs 1-109 of COUNTS 1 through COUNT IV as paragraphs 1-109 of COUNT V.

111. Plaintiff Gerald Simonsen was intentionally discriminated against by Defendants because of his race, Caucasian with withful intent to harm

112. Race discrimination by Defendants violates Gerald Simonsen's civil rights to be free from unlawful race discrimination.

113 Teachers of other races were not given discipline for similar conduct which Plaintiff Gerald Simonsen was given discipline of suspensions, Warning, charges filed with State Board of Education and the ongoing State hearing were past race discriminating discipline was placed in evidence by the Board.

114. Plaintiff Gerald Simonsen filed a Compliant in March 2001 with the EEOC. EEOC stated Right to Sue letter was mailed but not delivered as yet.

115 Race discrimination by Defendants violates the Equal Protection of the 14th Amendment and the Civil Rights Act of 1964 and

25

the Civil Rights Act of 1991.

WHEREFORE, Plaintiffs pray that this Honorable Court,

A. Enter judgment in their favor and against each and all of the Defendants as may be proven at trial,

B. Award actual damages with interest and benefits including lost coaching salary, summer school salary, and other lost earnings available to teachers,

C. Award punitive and compensatory damages

D. Award back salary from the end of thirty days for Gerald Simonsen's suspension, as Vallas is without authority to suspend over thirty days without Board approval pursuant to Illinois law.

E. Preliminary Injunction relief to salary status of suspended with pay or to former teaching position immediate without harassment

F. Award front pay in lieu of former teaching position

G. Order all derogatory references to Gerald Simonsen removed from all Board files or records, including State Board of Education

H. Order Board of Education to stop unlawful employment actions toward employees of the Board.

I. Order State Board of Education Administrative Hearing to conclude based on Illinois law of the doctrine of "res judicata" and federal doctrine of "res judicata" to save tax money.

J. Order Board of Education to return unjust suspension salary taken from Gerald Simonsen without cause,

26

K. Order Board to notify other tentired teachers who were discharged through unlawful actions of the Board or tenured teachers who resigned under threat of unlawful actions

L. Award Pro Se attorney fees warranted in this case.

## COUNT VI

116 Plaintiffs realleges and incorporates by reference paragraphs 1-115 of COUNTS 1 through COUNT V as paragraphs 1-115 of COUNT VI.

117 Plaintiff Gerald Simonsen was intentionally discriminated against by Defendants because of his sex; that being male.

118. Sex discrimination is a direct violation of rights guaranteed under Title VII of the Civil Rights Act of 1964 as amended, Civil Rights Act of 1991 and 42 U.S.C. § 2000(e) et. seq.

119 Discipline actions placed against Gerald Simonsen were not placed against female teachers at Hendrick school, these discipline action are being entered into the State Administrative Hearing in 2000 and 2001.

120. Plaintiff Gerald Simonsen was discriminated due to sex discrimination and the Board and each Defendants were aware, causing irreparable harm for all Plaintiffs.

27

121. Gerald Simonsen filed an EEOC complaint in March of 2001. The EEOC have stated that the Right to Sue Letter has been mailed to Simonsen, but not delivered as yet for unknown reasons.

122. In 1996 there were eight male teachers working at Hendricks and due to adverse actions all but Plaintiff Gerald Simonsen were intentionally moved to other schools or to retire. Simonsen was disciplined due to his sex and encouraged to transfer to another school.

WHEREFORE, Plaintiffs prays that this Court:

A. Enter judgment in their favor and against each and all of the Defendants as may be proven at trial.

B. Actual, compensatory and punitive damages

C. Award back pay from 30 days after suspension

D. Preliminary Injunction relief to suspension with pay due to irreparable harm

E. Order removal of all derogatory references to Gerald Simonsen by the Board

F. Award front pay in lieu of former teaching position

G. Order State Board Administrative hearing to end based on "res judicata" Doctrine of state and federal law.

H. Return of salary taken by unjust suspensions

I. Order Board to notify other tenured teachers who were discharged through unlawful actions of the Board or tenured teachers who resigned under threat of unlawful actions

J. Award Pro Se attorney fees warranted in this case.

## COUNT VII

123 Plaintiffs realleges and incorporates by reference Paragraphs 1-122 of COUNT 1 through COUNT VI as paragraphs 1-122 of COUNT VII.

124 Defendants all and each with intentional disregard for Plaintiff Gerald Simonsen's rights under state law and federal law failed to correct the hostile work environment at Hendricks school, causing harm to Plaintiffs

125. Since 1996 the majority of employees at Hendricks have transferred due to the know abuse of Defendant Gearring with no corrective actions taken by individual named defendants working under color of law.

126. Hostile environment at Hendricks was deliberate and with malice

127. Union grievances of Gerald Simonsen are still not attended to by the

29

Board and are ongoing as Labor and Employee Relations have deliberately ignored the problems affecting Simonsen.

WHEREFORE, Plaintiffs prays that this Court;

A. Enter judgment in their favor and against each and all Defendants as may be proven at trial

B. Award damages, actual, compensatory and punitive

C. Award back salary

D. Preliminary Injunction relief to suspension with pay

E. Order deragatory references be removed

F. Order State Hearing to end on "res judicata" ruling.

G. Award front pay in lieu of former teaching position.

H. Return suspension salary unjustly withheld

I. Order Board to notify discharged teachers or teachers who resigned under threat of unlawful actions

J. Award Pro Se attorney fees warranted in this case

# COUNT VIII

128 Plaintiffs realleges and incorporates by reference Paragraphs 1-127 of COUNT 1 through COUNT VII as paragraphs 1-127 of COUNT VIII.

30

129  Plaintiff Gerald Simonsen was intentionally discriminated against in his employment by each and all Defendants in willful violation of Simonsen rights guaranteed under the Constitution of the United States, 5th Amendment, 14th Amendment and 42 U.S.C. § 1981, 1983 and 1985.

130  Defendants intentionally by their actions joined in an overt action against Plaintiff Gerald Simonsen so that their actions formed a conspiracy to cause unlawful, adverse employment actions which caused great harm and suffering to all and each Plaintiff.

131  Defendants actions were, in part, to place false discipline, approve false charges, adopt false discipline, continue an adverse action without cause, sojourn false testimony, provide false information, and to delay the suspension without pay for the next three years by Court action if needed all under color of law and the power of the Board of Education to cause irreparable harm, suffering and emotional distress for all Plaintiffs.

31

132 The Board of Education could not cause the irreparable harm they have brought and continue to cause to each and all Plaintiffs but for the willful, intentional and knowingly participation of each and all Defendants.

133. No good reasons can be provided for the Defendants illegal actions,

134. Defendants Vallas, Johnson, Gearring, Smith, Bermejo and Ciesil all knew or should have know that perjury at an Administrative hearing is unlawful yet defendants took no corrective action required by law.

WHEREFORE, Plaintiffs prays that this Court:

A. Enter judgment in their favor and against each and all Defendants as may be proven at trial.

B. Actual damages including interest, benefits and lost salary to coaching, and summer school salary plus other salary denied. be awarded

C. Compensatory damages for pain and suffering

D. Punitive damages

E. Award immediate back pay from 30 days after start of unpaid suspension

32

F. Preliminary Injunction to suspension with pay or former teaching position immediately

G. Removal of deragatory references to Gerald Simonsen

H. Award front pay in lieu of former teaching position

I. Order end to State Board of Education based on "res judicate" doctrine of state and federal law.

J. Return of salary taken by unjust suspensions to be Ordered by this Honorable Court

K. Order Board to notify discharged teachers of the Board or teachers who resigned under threat of unlawful actions as custom of Board was illegal, unlawful

L. Award Pro Se attorney fees warranted in this case

## COUNT IX

135 Plaintiffs realleges and incorporates by reference paragraphs 1-134 as paragraphs from Count I through COUNT VIII as paragraphs 1-134 of COUNT IX.

136. Defendants each and all failed to prevent the unlawful actions toward Plaintiff Gerald Simonsen causing irreparable harm to all Plaintiffs

137. Failure to take corrective actions for a conspiracy to prevent the unlawful violations of constitutional rights guaranteed under the United States Constitution, 5th Amendment, 14th Amendment and 42 U.S.C. § 1981, 1983, 1985, 1986 by the defendants has caused irreparable harm to each and all Plaintiffs.

138. The Board was informed of unlawful actions and took no corrective action.

139. The Defendants performed their knowingly false discipline or giving false information to further the uncaused deprivations of the Plaintiffs

140 At all time relevant the defendants actions were without cause and performed under color of law to intentionally do harm to the Plaintiffs

141 Defendants each and all had many opportunities to take corrective actions and did not.

WHEREFORE, Plaintiffs prays that this Honorable Court:

A. Enter judgment in their favor and against each and all Defendants as may be proven at trial.

34

B. Award actual damages with interest and benefits including coach salary, summer school salary and other salary denied.

C. Award compensatory damages for pain and harm.

D. Award punitive damages

E. Award immediate back pay from 30 days after start of unpaid suspension

F. Preliminary Injunction relief to suspension with pay or teaching position formerly held

G. Removal of any and all deragatory references to Gerald Simonsen from Board of State Board.

H. Award front pay in lieu of former teaching position

I. Order end to State Administrative hearing due to "res judicata" doctrine of state and federal law.

J. Order return of salary taken by unjust suspensions.

K. Order Board to notify dismissed teachers of Board, or teachers who resigned under threat of unlawful actions as custom of Board was illegal and unlawful.

L. Award Pro Se attorney fees warranted in this case.

## COUNT X

142 Plaintiff realleges and incorporates by reference paragraphs 1-141 of Count I through COUNT IX as paragraphs 1-141

35

of COUNT X.

143. Plaintiff Gerald Simonsen was intentionally discriminated against by Defendants because of his age in direct violation of rights guaranteed to Simonsen under Age Discrimination in Employment Act 29 U.S.C. § 621, 623 et. seq

144. The Board Policy seeks dismissal of teachers over 40 years of age so less expensive salary will lower costs to Board, while providing sham public relations of more accountablity expected of teachers

145. While on unpaid suspension the teacher currently replacing Plaintiff Gerald Simonsen is less qualified, less experienced, and younger than Simonsen.

146. Plaintiff Gerald Simonsen remains qualified and willing to perform the duties of his teacher position, except that the Board due to his age has suspended Simonsen without paid cadsing great harm to all Plaintiffs.

147. Defendants treat teachers over 40 years of age harsher than teachers younger, including discipline, warnings and suspensions.

148. Adverse treatment of teachers at Hendricks caused most teachers since 1996 to leave to work at other schools or retire due to discrimination against teachers over 40 years of age by Defendant Gearring, known or should have been known to Rodriguez and Vallas.

149. The Board has removed many capable teachers from schools without cause other than being over 40 years of age, including Plaintiff Gerald Simonsen causing irreparable harm to all Plaintiffs.

150. Plaintiff Gerald Simonsen filed in March 2001, a Complaint with the EEOC. The EEOC has told Simonsen his letter of Right to Sue has been mailed, but has not yet been delivered.

WHEREFORE, Plaintiffs prays that this Honorable Court:

A. Enter judgment in their favor and against each and all Defendants as may be proven at trial.

B. Award actual damages with interest and benefits including coaching salary, summer school salary and other salary denied.

C. Award compensatory damages for pain and suffering.

D. Award punitive damages.

E. Award immediate back salary from 30 days after start of unpaid suspension

F Preliminary Injunction relief to suspension with pay or former teaching position.

G. Removal of any and all derogatory references to Gerald Simonsen from Board or State Board

H. Award front pay in lieu of former teaching position.

I Order end to State Administrative hearing due to "res judicata" doctrine of state and federal law

J Order return of salary taken by unjust suspensions

K. Order Board to notify dismissed teachers of Board or teachers who resigned under threat of unlawful actions as custom of Board was illegal and unlawful.

L. Award Pro Se attorney fees warranted in this case.

## PRELIMINARY INJUNCTION

151    Plaintiffs realleges and incorporates by reference to paragraphs 1-150 of the Complaint as paragraphs 1-150 for Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. Preliminary Injunction is directed only toward Defendant Chicago Board of Education, in support Plaintiffs States as follow:

152 Plaintiffs seek Preliminary Injunction for

38

relief of irreparable harm which is ongoing since December 7, 1999 when Plaintiff Gerald Simonsen was suspended without pay,

153. Irreparable harm of homelessness will continue for an unknown length as Board has stated that if Administrative hearing is for reinstatement an appeal would be taken at least to the Appellate level of Illinois courts, to keep Gerald Simonsen suspended without pay, and lasting three years. (Hearing officer's letter is Exhibit #19)

154. Public interest would be served by entry of Preliminary Injunction as the Board being required to observe constitutional rights, civil rights and state laws serves the public.

155. Plaintiffs have a very high likelihood of success on the merits.

156. No other remedy exists at law.

157. The Board would not be harmed by placing Gerald Simonsen on suspension with pay or returned to former teaching position.

158. Constitutional questions are involved.

159. Board of Education CEO lacked authority for more than 30 day suspension by law, of ILCS 105 5/34-85

160 Board President stated Principal wrote dismissal charges; violations of state law.

WHEREFORE, Plaintiffs prays ~~grants~~ that this Preliminary Injunction is granted by this Honorable Court for the following relief:

39

## Relief requested

1) That the Board of Education change Plaintiff Gerald Simonsen's suspension to suspension <u>with pay</u>, by order of Court

2) Or that Plaintiff Gerald Simonsen be reinstated to former teaching position, by order of Court

3) Back salary of Plaintiff Gerald Simonsen as Paul Vallas was without authority to suspend more than 30 days pursuant to Board policy, by Order of Court.

PLAINTIFFS DEMAND A TRIAL BY JURY FOR THIS COMPLAINT ON ALL COUNTS

Respectfully submitted,

Gerald Simonsen
_____
Gerald Simonsen    pro se

Ilse Simonsen
_____
Ilse Simonsen       pro se

Christine Simonsen
_____
Christine Simonsen    pro se

Pamela Simonsen
_____
Pamela Simonsen     pro se

Paulette Simonsen
_____
Paulette Simonsen    pro se

Gerald Simonsen
P.O. Box 300754
Chicago, Il 60630-0754
No phone

40

PETITIONER'S EXHIBIT



# CHICAGO SCHOOL REFORM BOARD MEETING

Agenda of Action                    April 21, 1999          Exhibit #1
                                                              6 pages

## NON-DELEGABLE BOARD REPORTS THAT REQUIRE TRUSTEE ACTION

### MOTION
99-0421-MO1  Motion to Close                                                    *Adopted

### REPORT FROM THE CHIEF EXECUTIVE OFFICER
99-0421-EX9   Warning Resolution - Geraldine Baginski, Teacher, Schurz High School          *Adopted

99-0421-EX10  Warning Resolution - Ingrid Bell, Teacher Assigned to John Marshall Metro High School    *Adopted

99-0421-EX11  Warning Resolution - James Boggan, Teacher Assigned to Victor Herbert School    *Adopted

99-0421-EX12  Warning Resolution - Marie Davis, Teacher Assigned to Transition F Center High School   *Adopted

99-0421-EX13  Warning Resolution - Eugene McCray, Teacher Assigned to John Marshall Metro High School   *Adopted

99-0421-EX14  Warning Resolution - Linda L. McGlin, Teacher Assigned to Arai Middle School    *Adopted

99-0421-EX15  Warning Resolution - Gerald Simonsen, Teacher, Thomas A. Hendricks Community Academy   *Adopted

99-0421-EX16  Warning Resolution - Karen Vargo, Teacher, Evergreen Academy Middle School    *Adopted

99-0421-EX17  Request for Dismissal of Maria Ayala, School Clerk, Stephen T. Mather High School   *Adopted

99-0421-EX18  Request for Dismissal of Raymond Donaldson, Custodial Worker, Percy L. Julian High School   *Adopted

99-0421-EX19  Request for Dismissal of Sylvia Dotson, School Assistant, Walter Reed Elementary School   *Adopted

99-0421-EX20  Request for Dismissal of Donald Dowdell, Watchman, Central Office Safety and Security   *Adopted

99-0421-EX21  Request for Dismissal of Kevin Hamer, Child Welfare Attendant, Theodore Herzl Elementary School   *Adopted

99-0421-EX22  Request for Dismissal of Hubert Hogue, School Bus Aide, Ray Graham Training Center   *Adopted

99-0421-EX23  Request for Dismissal of Rosemary Lapinard, Teacher Assistant, Robert Emmet Academy   *Adopted

99-0421-EX24  Request for Dismissal of Linda Miller, School Assistant, Horace Greeley Elementary School   *Adopted

99-0421-EX25  Request for Dismissal of Hassie Monille, Lunchroom Attendant, Yates Elementary School   *Adopted

99-0421-EX26  Request for Dismissal of Wilbert Moore, Custodial Worker, Leslie Lewis Elementary   *Adopted

99-0421-EX27  Request for Dismissal of Adeline Orr, School Bus Aide, Mark Twain Elementary School   *Adopted

99-0421-EX28  Request for Dismissal of Thomas Perkins, Engineer, Hyde Park Academy   *Adopted

99-0421-EX29  Request for Dismissal of Austin Phillips, Custodial Worker, Harlan Community Academy High School   *Adopted

000924

Ex 1

April 21, 1999

## WARNING RESOLUTION-GERALD SIMONSEN
## TEACHER, THOMAS A. HENDRICKS COMMUNITY ACADEMY

### TO THE CHICAGO SCHOOL REFORM BOARD OF TRUSTEES

### THE CHIEF EXECUTIVE OFFICER RECOMMENDS THE FOLLOWING:

That the Chicago School Reform Board of Trustees adopt a Warning Resolution for Gerald Simonsen and that a copy of this Board Report and Warning Resolution be served upon Gerald Simonsen.

**DESCRIPTION:** Pursuant to the provisions of 105 ILCS 5/34-85, the applicable statute of the State of Illinois, the Rules of the Board of Education of the City of Chicago, and Board Report 80-231-19, a Warning Resolution must be adopted and issued to Gerald Simonsen, teacher to inform him that he is engaging in unsatisfactory conduct.

The conduct outlined in the Warning Resolution will result in the preferring of dismissal charges against Gerald Simonsen pursuant to the Statute, if said conduct is not corrected immediately, and maintained thereafter in a satisfactory fashion following receipt of the Warning Resolution. Directives for improvement of this conduct are contained in the Warning Resolution.

**LSC REVIEW:** LSC review is not applicable to this report.

**AFFIRMATIVE ACTION REVIEW:** None.

**FINANCIAL:** This action is of no cost to the Board.

**PERSONNEL IMPLICATION:** None.

Respectfully submitted,

Paul G. Vallas
Chief Executive Officer

Approved as to legal form:

Marilyn F. Johnson
Attorney

000925

Ex 1

# WARNING RESOLUTION

**WHEREAS,** the Chicago School Reform Board of Trustees deems it necessary to issue a warning notice to Gerald Simonsen, a teacher at Thomas A. Hendricks Community Academy, in that he exhibited conduct unbecoming a teacher.

**NOW, THEREFORE, BE IT HEREBY RESOLVED** that the Chicago School Reform Board of Trustees issues a warning to Gerald Simonsen to correct the following deficiency in his conduct and offers directives for improvement of the deficiency listed below:

## Deficiencies

1.  During the 1997-98 and 1998-99 school years, you violated Section 1-2 of the Employee Discipline Code which prohibits the failure to submit lesson plans and other reports as directed by the Principal or in a timely manner. Specifically you committed the following violations:

    i)   You failed to submit a report in response to the Principal's request made on September 2, 1997, and again on September 12, 1997 relative to the supervision of your students.

    ii)  As of September 12, 1997, you failed to timely submit lesson plans which were due September 5, 1997.

    iii) On October 6, 1997, you failed to submit your students' graded papers and your grade book to the Principal as requested. As of October 10, 1997, you still did not submit the above-requested documentation.

    iv)  On or about March 6, 1998, you failed to timely submit Performance Contracts which were due on that date.

    v)   On March 12, 1998, and again on March 15, 1998, you failed to submit a strategy plan for the improvement of school scores as requested by the Principal and were provided with a memorandum relative to this failure.

    vi)  On or about August 25, 1998, you failed to submit your written response before the end of the day relative to your pattern of tardiness as directed by the Principal. You did not submit this response until August 28, 1998.

    vii) On or about November 2, 1998, you failed to timely submit your lesson plans for the week ending November 13, 1998.

    viii) As of December 3, 1998, you failed to submit your 1998-99 Professional Plan which was due November 16, 1998.

Ex 1

2.   You violated Section 1-9 of the Employee Discipline Code which prohibits having an irregular or excessive absence or tardiness record or a pattern of repeated absence or tardiness at a specific time or on specific days of the week or month or in relation to holidays.  Specifically, you were tardy and/or absent on the following occasions:

i)   On or about September 5, 1997, you missed the first staff meeting of the 1997-98 school year.

ii)   On or about September 12, 1997, you were scheduled to meet with the Principal and you called in sick.

iii)   On or about August 20, 1998, you were approximately thirty minutes late to the first day of staff development.

iv)   On or about August 21, 1998 you were tardy to the second day of staff development and did not swipe or sign in.

v)   On or about August 24, 1998 you were approximately one hour late and missed the mandatory staff development field trip activity.

vi)   On or about August 25, 1998, you failed to be present at the morning staff briefing.

vii)   On or about December 1, 1998, you did not attend the Primary team meeting.

3.   You violated Section 1-10 of the Employee Discipline Code which prohibits negligent supervision of students, as follows:

i)   On or about September 2, 1997, you did not supervise your students during dismissal.

ii)   On or about October 23, 1998, your students were left unattended in class.

iii)   On or about October 29, 1998, your students were left unattended during and after opening exercises.

iv)   On or about December 3, 1998, your students were left unattended and two boys were found tussling on your classroom floor.

Ex l

4.  You violated Section 1-12 of the Employee Discipline Code which prohibits insubordinate actions including failure to carry out a rule, order, or directive related to the performance of the employee's duty, as follows:

> i)  On or about September 8, 1997, you were given a directive to organize your classroom and post student work. On or about September 14, 1997, Mr. Davis, the primary coordinator, provided you with suggestions for organizing ans decorating your classroom, including the directive that you should display your students' work in the classroom. Nevertheless, on or about October 8, 1997, you still failed to exhibit your students' work.

> ii)  On or about October 8, 1997, you failed to follow the Principal's directive to submit to her your students' graded papers and your grade record. Moreover, you were absent on October 10, 1997, and did not submit the aforementioned documentation despite receiving a memorandum further directing you to comply by October 10, 1997.

> iii)  On or about November 16, 1998, you failed to comply with a memorandum dated November 6, 1998, from Dr. Cozette Buckney, Chief Education Officer, by disseminating a survey without having it approved by the Office of the Chief Executive Officer and the Law Department.

5.  During the 1997-98 school year, you failed to return calls from parents and to address concerns regarding your grading of students' work.

6.  You violated Section 2-1 of the Employee Discipline Code which prohibits repeated or flagrant acts of Group 1 misconduct.

7.  You violated the Principal's directive relative to professional dress as follows:

> i)  On or about January 16, 1998, you wore blue jeans after being directed by the Principal that such clothing was not acceptable.

> ii)  On or about January 22, 1998, you wore gym shoes.

> iii)  During the 1997-98 school year, the Principal informed you that several of your students and parents had complained about your non-professional attire.

Ex 1

## Directives for Improvement

1. Complete and submit all lesson plans, record books and or other reports as requested by the Principal by the given deadline.

2. Arrive to school at your designated start time. Notify appropriate school personnel when you will be tardy or absent from school. Prior to any absence, make certain that all administrative requests have been completed.

3. Attend all scheduled staff meetings and conferences with the Principal.

4. Immediately cease your practice of leaving students unattended in your classroom. Secure appropriate supervision for students when you must leave your classroom. You must supervise your students before and during dismissals.

5. Answer and comply with all administrative directives including but not limited to: (i) oral or written directives made by the Principal requesting written explanations; (ii) oral or written directives made by the Principal to submit lesson plans, record books, and/or other records; and (iii) administrative memorandum relative to the approval of surveys prior to dissemination.

6. You must return all parents' phone calls. In the event that parents request to discuss their child's grade, you must be prepared to show complete documentation of their child's scores. Thus, when completing your grade book, list your students alphabetically; provide a grade section for each of the curricular areas; and enter the date and title of each assignment and the grade earned.

7. You must wear appropriate professional attire to work. Do not wear blue jeans or gym shoes.

Dismissal will be requested if you fail to comply with the directives for improvement as noted above.

Respectfully submitted,

*Paul G. Vallas*

Paul G. Vallas
Chief Executive Officer

Approved as to legal form:

*Marilyn F. Johnson*

Marilyn F. Johnson
Attorney

000929

95-1025-PO1                                October 25, 1995

# CHICAGO SCHOOL REFORM BOARD OF TRUSTEES

*Exhibit #2*
*3 pages*

## *PERSONNEL POLICY*

## *TEACHERS AND ADMINISTRATORS: DISCIPLINE*

### Section 1 - Causes For Disciplinary Action

The Chicago Public Schools, a public employer, requires that its employees perform their duties in a manner which furthers the efficiency and best interests of the School District, and which results in the highest level of public trust and confidence in the City's schools.

In accordance with the provisions of this Policy, principals have authority and responsibility to take disciplinary action against any teacher or certificated employee whose conduct does not further the efficiency and best interests of the School District. The Chief Executive Officer and Regional Educational Officers ("chief administrators") have authority and responsibility to take disciplinary action against any teacher whose conduct does not further the efficiency and best interests of the School District; however, only the Chief Executive Officer or his designee shall have authority to discipline principals and other administrators. The degree of discipline to be meted out is dependent on various factors including, but not limited to, the seriousness of the offense, the employee's work record and the totality of the circumstances. The conduct described below, when engaged in by an employee, will result in disciplinary action which may include discharge unless the employer, taking all circumstances into account, deems it to be excusable.

If an employee is covered by a Collective Bargaining Agreement, that agreement will govern to the extent it conflicts with this Policy or contains additional requirements.

"Teachers" as used in this Policy refers to teachers, counselors, social workers, librarians and all other teacher certificated employees included in the Chicago Teachers Union bargaining unit who are not defined as "career service" or educational support personnel.

"Administrators" are defined as principals and other supervisory personnel employed on administrative certificates issued by the Illinois State Board of Education.

95-1025-PO1                                              Ex.2

determine what degree of discipline is appropriate after weighing all the situational factors involved in the misconduct.

(b)   TYPES OF DISCIPLINARY ACTION - The types of disciplinary action which may be imposed include the following:

Reprimand, which is a censure expressing formal disapproval of the actions of an employee, but carrying no loss of privileges. A reprimand may be oral or in writing, but in either case is made part of the employee's record.

Suspension, which is the temporary removal from employment, accompanied by a concurrent and temporary loss of the privileges of employment, including but not limited to salary or wages. In accordance with the provisions of this Policy, the principal or chief administrator has authority to suspend or to recommend suspension of an employee for thirty (30) days or less.

Notice to Remedy, which is a formal written warning regarding performance or misconduct deemed to be remediable.

Unsatisfactory Rating/Article 24A Remediation Plan for Teachers, which is the formal process for remediating pedagogical deficiencies as set forth in Article 24A of the School Code.

Discharge, which is the act of dismissal from employment and the permanent loss of all privileges of employment. Discharge includes the withdrawal of any right to reinstatement from layoff or leave of absence.

(c)   An affected employee shall have the right to have a written response to any disciplinary action taken against him placed in his personnel record by submitting the response to the principal or chief administrator within five (5) days of the imposition of the disciplinary action.

(d)   Principals and Regional Educational Officers must notify Department of Human Resources of all disciplinary action imposed on teachers, although the failure to do so shall not affect the disciplinary action taken.

The following procedures govern disciplinary suspensions of teachers. For disciplinary suspensions of principals and administrators, the Chief Executive Officer or his designee shall be responsible for imposing discipline, pursuant to Section 8 below.

3

95-1025-PO1                                                    EX. 2

## Section 3 - Pre-discipline Hearing and Suspension Pending Dismissal

Whenever suspension is being considered against a teacher, the employee shall be given advance written notice that such action is being considered by the principal or chief administrator. The notification shall include a description of and cause for the disciplinary action and the date, time and place when an informal, pre-discipline hearing will be held.

The hearing will be conducted by the principal or chief administrator considering the discipline. At such hearing, the employee will be informed of the proposed charges, provided with an explanation of the basis of the charges, and afforded an opportunity to respond and present his explanation of the applicable facts and circumstances.

The employee may be represented at the hearing upon request by one person of his choice, including an attorney or a union representative. The rules of evidence will not be applied. At the hearing, the employee may make oral or written presentations, which may include the employee's view of the appropriateness or necessity of suspension without pay pending other discipline, if such suspension is being considered, as well as comment on the proposed charges. Any statements of witnesses presented by the employee must be in writing.

After such hearing, the principal or chief administrator will determine what discipline, if any, to impose short of discharge or suspension without pay for more than fifteen (15) days. Suspensions of teachers without pay for one (1) to fifteen (15) days will be reviewed by the Regional Educational Officer upon request of the employee, as provided below. Discharge and suspensions of sixteen (16) to thirty (30) days must be determined by the Chief Executive Officer.

The procedure described in this Section 3 will be followed for suspension of a teacher without pay pending recommended dismissal, except that the notification and pre-discipline hearing will be conducted by the Director of Human Resources or a designee. No other notification or appeal rights shall apply to such suspensions.

## Section 4 - Notification Of Discipline And Appeal Rights

When a principal or chief administrator determines that a suspension without pay is to be imposed, the employee will be notified in writing and on a timely basis of such action. The notification will include a description of and cause for the disciplinary action and the dates on which the employee shall serve the suspension. As appropriate, the employee further will be advised as follows:

4

PETITIONER'S EXHIBIT



# CHICAGO SCHOOL REFORM BOARD MEETING

June 23, 1999

Exhibit #3
4 pages

Agenda of Action

**MOTION**                                                                          *Adopted
99-0623-MO1  Motion to Close

**NON-DELEGABLE BOARD REPORTS THAT REQUIRE TRUSTEE ACTION**

**REPORT FROM THE CHIEF EXECUTIVE OFFICER**
99-0623-EX6   Warning Resolution - Anne Grossman, Teacher, Assigned to Joseph E. Gary Elementary School    *Adopted

99-0623-EX7   Warning Resolution - Helen Potakis, Teacher, Schurz High School    *Adopted

99-0623-EX8   Warning Resolution - Gerald Simonsen, Teacher, Thomas A. Hendricks Community Academy    *Adopted

99-0623-EX9   Warning Resolution - Cody Sweet, Teacher, Assigned to Waters Elementary School    *Adopted

99-0623-EX10  Warning Resolution - Tracy Cunningham, Teacher, Assigned to Mt. Vernon Elementary School    *Adopted

99-0623-EX11  Request for Dismissal of Martin Espinosa, Custodial Worker, Pope Elementary School    *Adopted

99-0623-EX12  Request for Dismissal of Patricia Hale, Lunchroom Attendant, Depriest Elementary School    *Adopted

99-0623-EX13  Request for Dismissal of Larry Phillips, Custodial Worker, Banneker Elementary School    *Adopted

99-0623-EX14  Report of the Results of the Board of Trustees' Review of the Findings of Fact and    *Adopted
              Recommendation of the Hearing Officer Regarding the Charges Preferred Against
              Myrda Adams-Hardaway, Reassigned Teacher

99-0623-EX15  Report of the Results of the Board of Trustees' Review of the Findings of Fact and    *Adopted
              Recommendation of the Hearing Officer Regarding the Charges Preferred Against
              Maria Prato, Principal of Henry Clay Elementary School

**REPORTS FROM THE CHIEF OPERATING OFFICER**
99-0623-OP3   Authorization to Purchase 4550 South Kedzie for the Construction of a New School to    *Adopted
              Relieve Overcrowding at the Davis and Shields Elementary Schools

99-0623-OP4   Authorization to Purchase 4544 South Kedzie for the Construction of a New School to    *Adopted
              Relieve Overcrowding at the Davis and Shields Elementary Schools

99-0623-OP5   Authorization to Purchase 1701 West Morse Avenue for the Construction of a New School to    *Adopted
              Relieve Overcrowding in the Field School Attendance Area

99-0623-OP6   Authorization to Purchase 5252 West Palmer and 2250 North Latrobe (Weber High School)    *Adopted

99-0623-OP7   Authorization to Pay Final Just Compensation Judgement Award for the Acquisition of    *Adopt
              4846-4848 West Walton Avenue for the Construction of the Ronald E. McNair Academic Center

**RESOLUTIONS**                                                                     Adopted
99-0623-RS1   Resolution Re: Phillip Jackson, Chief of Staff to the Chief Executive Officer

99-0623-RS2   Resolution Re: Rudolfo Serna, Retired Deputy Director of School and Community Relations    Adopted

Ex 3

## WARNING RESOLUTION

**WHEREAS,** the Chicago School Reform Board of Trustees deems it necessary to issue a warning notice to Gerald Simonsen, a teacher at Thomas A. Hendricks Community Academy, in that he exhibited conduct unbecoming a teacher.

**NOW, THEREFORE, BE IT HEREBY RESOLVED** that the Chicago School Reform Board of Trustees issues a warning to Gerald Simonsen to correct the following deficiency in his conduct and offers directives for improvement of the deficiencies listed below:

<u>Deficiencies</u>

1. You violated Warning Resolution 99-0421-EX15 which the Board adopted on April 21, 1999. <u>See</u> Exhibit "A" attached hereto.

   In relevant part, this Warning Resolution directed you as follows:

   i) Complete and submit all lesson plans, record books and or other reports as requested by the Principal by the given deadline.

   ii) Attend all scheduled staff meetings and conferences with the Principal.

   iii) Answer and comply with all administrative directives including but not limited to: (i) oral or written directives made by the Principal requesting written explanations; (ii) oral or written directives made by the Principal to submit lesson plans, record books, and/or other records; and (iii) administrative memorandum relative to the approval of surveys prior to dissemination.

   iv) You must wear appropriate professional attire to work. Do not wear blue jeans or gym shoes.

2. Although this Warning Resolution informed you that dismissal would be requested if you failed to comply with the directives for improvement, you violated the aforementioned Warning Resolution when you disregarded the above-listed directives and committed the following violations:

   i) You violated Section 1-2 of the Employee Discipline Code which prohibits the failure to submit lesson plans and other reports as directed by the Principal or in a timely manner. Specifically, you engaged in the following conduct:

   a) You failed to submit your April 30, 1999 lesson plan which was due on May 2, 1999.

000934
WR II

Ex. 3

b)    As of May 12, 1999, you failed to submit a completed 1998-99 Professional Plan which was due on November 16, 1998, and you disregarded the reminders given to you on or about November 25, 1998, December 3, 1998, April 12, 1999 and May 10, 1999 relative to this over due Professional Plan.

c)    You failed to submit a form relative to summer training which was due May 19, 1999.

ii)    You violated Section 1-12 of the Employee Discipline Code which prohibits insubordinate actions including failure to carry out a rule, order, or directive related to the performance of the employee's duty, as follows:

a)    On or about May 10, 1999, you violated the Principal's directive relative to professional dress when you wore gym shoes and jeans after being directed by the Principal that such clothing was not acceptable.

b)    On May 12, 1999, you failed to follow a directive to complete and submit the over due 1998-99 Professional Plan. Specifically, you violated this directive when you submitted this Professional Plan on May 11, 1999, with the following unresponsive answers to all inquires: " I do not wish to share my personal feelings"; "can't remember"; and "I do not wish to share."

c)    On or about May 21, 1999, you failed to follow the Principal's directive to attend a staff development meeting.

d)    As of May 24, 1999, you have disregarded the Principal's directive to submit a form relative to summer training.

iv)    As a result of your continued above-mentioned conduct, you violated Section 2-1 of the Employee Discipline Code which prohibits repeated or flagrant acts of Group 1 misconduct.

3)    Moreover, prior to your receipt of the April, 1999, Warning Resolution, you continued to violate Section 1-9 of Employee Discipline Code which prohibits having an irregular or excessive absence or tardiness record or a pattern of repeated absence or tardiness at a specific time or on a specific days of the week insubordinate actions including failure to carry out a rule, order, or directive related to the performance of the employee's duty, as follows:

i)    On or about March 17, 1999, you failed to attend a Primary Team meeting.

*Ex 3*

ii)     On or about March 21, 1999, you failed to attend a Primary Team meeting.

iii)    On or about April 22, 1999, you failed to attend a Primary Team meeting.

## Directives for Improvement

1.  Complete and submit all lesson plans, record books and or other reports and forms as requested by the Principal by the given deadline. Unresponsive and incomplete answers to inquiries on the above-mentioned reports, plans and or forms are unacceptable.

2.  Attend all scheduled staff meetings and conferences with the Principal.

3.  Answer and comply with all administrative directives including but not limited to: (i) oral or written directives made by the Principal requesting written explanations; (ii) oral or written directives made by the Principal to submit lesson plans, record books, and/or other records and forms; and (iii) oral or written directives to wear appropriate professional attire to school.

4.  Abide by Thomas A. Hendricks Community Academy rules and regulations relative to wearing appropriate professional attire to work. Do not wear blue jeans or gym shoes.

Dismissal will be requested if you fail to comply with the directives for improvement as noted above.

Respectfully submitted,

Paul G. Vallas
Chief Executive Officer

Approved as to legal form:

Marilyn F. Johnson
Attorney

*INR II*



**CHICAGO PUBLIC SCHOOLS**



Exhibit #4
2 pages

**Paul G. Vallas**
Chief Executive Officer

September 17, 1999

Mr. Thomas H. Reece
President
Chicago Teachers Union
222 Merchandise Mart Plaza, Suite 400
Chicago, Illinois 60654-1005

RE:     Gerald Simonsen
        #99-06-124(ljl) and
        #99-06-180(ljl)

Dear Mr. Reece:

Pursuant to the provisions of Article 3-3 of the *1995-99 Agreement between the Chicago School Reform Board of Trustees and the Chicago Teachers Union*, a conference was held on September 2, 1999 concerning the above referenced grievance. This grievance was filed on behalf of Mr. Gerald Simonsen, a Teacher at Hendricks School, on April 29, 1999. Present at the conference were Mr. Larry J. Laughlin, Field Representative, Chicago Teachers Union; Mr. Gerald Simonsen, grievant; Ms. Carol Gearring, Principal, Hendricks School; Ms. Cheryl L. Nevins, Coordinator, Bureau of Labor and Employee Relations.

Alleged Violation(s)
Articles 1-3, 1-4, 1-18 and 2-1. The grievant alleges that the Principal lacks any authority to impose a dress code on teachers. The grievant alleges that no Board Policy exists mandating a dress code for teachers. The grievant requests that the principal cease imposing a dress code.

Principal's Response
According to Principal Gearring there is no "official" dress code policy for teachers. However, she has simply requested her teaching staff to dress professionally by not wearing jeans or gym shoes. Principal Gearring indicated that students are not allowed to wear jeans or gym shoes and teachers should model professional dress and professional behavior.

Decision(s)
Since #99-06-124(ljl) and #99-06-180(ljl) are identical, this decision applies to both grievances. These grievances are based on alleged violations of Article 1-3, 1-4, 1-18 and 2-1, however the grievant proffered no evidence that he was discriminated on the basis of race, sex, gender, national origin or union activities. Although the Board does not have an official dress code policy for teachers, teachers are expected to dress professionally and to exhibit conduct becoming a Chicago Public School teacher. Principals have the authority to request teachers to dress professionally. No contract violation occurred. Grievances denied.

Sincerely,

Paul G. Vallas
Chief Executive Officer

PGV:CP:cln

cc:     Mr. Carlos Ponce
        Mr. Jose Rodriguez
        Ms. Carol Gearring
        Mr. Gerald Simonsen



**CHICAGO PUBLIC SCHOOLS**

Department of Human Resources • 125 South Clark Street, 2nd Floor • Chicago, Illinois 60603
Telephone 773/553-1070 • FAX 773/553-1071

Carlos Ponce
Chief Human Resources Officer

October 12, 1999

Mr. Gerald Simonsen
3519 N. Reta
Chicago, Illinois 60657

Dear Mr. Simonsen:

As your Region Education Officer's designee, I have received your written appeal of the disciplinary action taken against you pursuant to the attached Notice of Disciplinary Action. Based on the results of the Appeal Review held on September 2, 1999, in the Bureau of Labor and Employee Relations, I have decided to uphold the Principal's decision to suspend you for fifteen (15) days.

Your principal is your supervisor and is empowered by the Board's disciplinary policies to take disciplinary action against employees at the local school level. The record indicates that there was a sufficient basis for such school-based discipline.

Your principal clearly has the authority to require you to dress professionally, to report for work timely and to submit lesson plans and reports promptly. In the future, you are to follow her directives. Your repeated failure to follow directives will lead to further disciplinary action, up to and including discharge.

Your suspension without pay will begin October 13, 1999, and will continue through November 2, 1999. You are to return to work on November 3, 1999.

Sincerely,

Carlos Ponce
Chief Human Resources Officer

CP:CLN:rdh
Attachment

cc:  Ms. Carol Gearring - Principal, Hendricks Academy
     Mr. Larry Laughlin - Field Representative, Chicago Teachers Union

*Children First*



**CHICAGO PUBLIC SCHOOLS**

Paul G. Vallas
Chief Executive Officer

*Exhibit #5*
*5 pages*

November 12, 1999

Mr. Gerald Simonsen
703 West Indiana Street
St. Charles, Illinois 60174

Dear Mr. Simonsen:

Pursuant to §34-85 of <u>The School Code of Illinois</u> you are hereby notified that I have approved the charges against you for conduct unbecoming an employee of the Chicago Public Schools. Enclosed please find a copy of the written charges and specifications. You are further notified that I am requesting that you be suspended, without pay, pending a hearing on the charges approved against you. Prior to the dismissal hearing conducted by an independent hearing officer, you will be afforded a pre-suspension hearing to be held in the Bureau of Labor and Employee Relations. You will receive notification from the Bureau of Labor and Employee Relations as to the date and time of the pre-suspension hearing.

<u>Pursuant to statute, a dismissal hearing has been tentatively scheduled for December 6, 1999. However, you will be dismissed from your employment with the Board of Education of the City of Chicago and no hearing upon the charges will be held unless, within 10 days after receiving this notice, you request in writing of the Chief Executive Officer that a dismissal hearing be scheduled on the charges.</u> If you wish to request a hearing on the charges, please direct your written communication to Ms. Marilyn F. Johnson, General Counsel, Board of Education of the City of Chicago, 125 South Clark Street, Suite 700, Chicago, Illinois 60603.

Sincerely,

Paul G. Vallas
Chief Executive Officer

PGV/KAB/ pmv
Enclosures
cc:     Marilyn F. Johnson
        Robert R. Hall, Jr.

I have received a certified copy of the foregoing Request for dismissal, including the charges and specifications this _____17th_____ day of _November_ 1999.

Gerald Simonsen

Ex. 5

## APPROVAL OF DISMISSAL CHARGES AGAINST
## GERALD SIMONSEN, A TEACHER ASSIGNED TO
## THOMAS A. HENDRICKS ACADEMY

### THE CHIEF EXECUTIVE OFFICER

hereby approves the following charges against Gerald Simonsen, a teacher, assigned to Thomas A. Hendricks Academy.

### CHARGES

I charge Gerald Simonsen with:

1. Violation of Section 4-9 of the Employee Discipline Code Section which prohibits violation of School Rules, or Board Rules, policies or procedures which result in behaviors that grossly disrupt the orderly educational process in the classroom, in the school, and may occur on or off school grounds or assigned work location.

2. Violation of Section 4-8 of the Employee Discipline Code which prohibits any conduct which is cruel, immoral, negligent, criminal, or causes psychological or physical harm or injury to a student.

3. Violation of Section 1-2 of the Employee Discipline Code which prohibits failure to submit lesson plans and other reports as directed by the Principal in a timely manner.

4. Violation of Section 1-12 of the Employee Discipline Code which prohibits insubordinate actions, including failure to carry out a rule, order or directive related to the performance of the employee's duty.

5. Violation of Section 2-1 of the Employee Discipline Code which prohibits repeated or flagrant acts of Group 1 misconduct.

6. Violation of Board Policy Section 605.7, the Policy on Change of Student Grades, which in relevant part states, pursuant to the School Code, "...evaluation of students is to be carried out within the framework of system-wide and local school polices and procedures, and is to be based upon the teacher's professional judgment of pertinent grading criteria. Written, accurate evaluation records of each student are to be maintained by the teacher, who shall be prepared to justify assigned grades."

7. Violation of Warning Resolution 99-0421-EX15.

8. Violation of Warning Resolution 99-0623-EX8.

9. Conduct unbecoming an employee of the Chicago Public Schools.

Ex 5

# SPECIFICATIONS

1. On or about April 21, 1999, the Board approved a Warning Resolution wherein the Chief Executive Officer ("CEO") directed you to "[c]omplete and submit all lesson plans, record book and or other reports as requested by the Principal by the given deadline."

   A. The Warning Resolution specifically stated that "[d]ismissal will be requested if you fail to comply with the directives for improvement as noted above."

   B. Nevertheless, you violated this Warning Resolution when you failed to comply with the aforementioned directive by refusing to submit your record book to your Principal throughout the 1998-1999 school year.

2. On or about June 23, 1999, the Board adopted a second Warning Resolution wherein the CEO again directed you to "[c]omplete and submit all lesson plans, record books and/or other reports and forms as requested by the Principal by the given deadline."

   A. This Warning Resolution again alerted you that "[d]ismissal will be requested if you fail to comply with the directives for improvement as noted above."

   B. In complete disregard of the CEO's directive for improvement, and despite repeated requests by your Principal, you failed to produce any record book at the close of the 1998-1999 school year.

3. On or about June of 1999, you did not submit names of students who required remedial attention and instead arbitrarily selected students to attend summer school.

4. On or about June of 1999, you promoted two students who lacked the proper skill development for the third grade. Contrary to your recommendation for promotion, Ms. Archuleta, a summer school early interventions teacher, determined that M.P. should receive special education and that L.D. should be retained in the second grade.

5. Throughout the 1998-1999 and 1999-2000 school years, you failed to maintain an accurate evaluation record for the students in violation of Board Policy Section 605.7, the Policy on Change of Student Grades.

6. At the close of the 1998-1999 school year, you were unable to justify the grades you assigned to your students. In addition, you were unable to justify your students' grades at the conclusion of the first quarter of the 1999-2000 school year.

*Ex 5*

7.    During the 1999-2000 school year, you were repeatedly insubordinate to your Principal, as follows:

*Black Law Dictionary:*
*① wilful disregard of employer's instructions*
*② An act of disobedience to proper authority esp. a refusal to obey an order that a superior officer is authorized to give*

A.    You violated your Principal's written directive of August 24, 1999, relative to your record book when you failed to submit your 1998-1999 record book at any time. Specifically, you disregarded the directive which instructed you to "Be current at all times and furnish lesson plans, record books, and other reports when requested by an administrator. Specifically, you must furnish the record book for the 1998-1999 school year within 48 hours of receipt of this letter."

B.    On or about October 9, 1999, you refused to submit your 1999-2000 grade book to your Principal at any time. Later that day, your Principal went to your class and discovered that after approximately six weeks of classes, you had only one entry in your record book which reflected a homework assignment.

*Hearing May 10, 1999 →*

C.    On or about October 13, 1999, you were suspended for fifteen (15) days in part due to your repeated insubordinate actions and failure to submit a record book.

*After work ?*

D.    On or about October 13, 1999, your refused to follow your Principal's directive to submit your grade book prior to serving your suspension, and stated that you "didn't know where it was."

8.    During the 1999-2000 school year, you neglected the evaluation of your students' work and you failed to report your students' progress, as follows:

A.    On or about September 27, 1999, a voluminous amount of ungraded student work, dating as early as August 25, 1999, was found piled in your desk.

B.    On or about September 30, 1999, you displayed a student's paper (J.S.) marked with the letter grade of "F" and with the comment "one hour of talking". Moreover, you refused to offer the Principal a written explanation of the pedagogical reason for exhibiting this student's paper.

C.    On or about October 8, 1999, you failed to submit accurate progress reports.

D.    On or about October 13, 1999, you left Hendricks Academy to serve a suspension without leaving student work or a record of student evaluation for Ms. Thomas, the interim teacher. As a result, Ms. Thomas was required to start a new grade book for your class.

Ex 5

E.    You did not submit for scoring two diagnostic tests which were given to twenty-three (23) students in your classroom on September 8, 1999. On October 29, 1999, Ms. Thomas, the interim teacher, found these ungraded diagnostic tests consisting of nineteen (19) pages of Reading and seventeen (17) pages of Math. Due to your negligent conduct, your students' deficiencies were not identified and your students' skill development needs were not addressed.

F.    Although your suspension period ended November 2, 1999, you did not report to work for report card pick up day on November 3, 1999, and ignored your responsibility to be available to speak with parents regarding their children's academic progress.

G.    On or about November 3, 1999, you failed to issue report cards that properly reflected your students' progress throughout the semester. Moreover, due to your negligent conduct, the only quarter grades your students received were from their auxiliary classes.

9.    Thus, your conduct grossly disrupted the orderly educational process in the classroom, is deemed irremediable, and warrants dismissal.

Respectfully submitted,

Paul G. Vallas
Chief Executive Officer

Approved as to legal form:

Marilyn F. Johnson
General Counsel



*Exhibit #6*
*2 pages*

**CHICAGO PUBLIC SCHOOLS**

Paul G. Vallas
Chief Executive Officer

Bureau of Labor and Employee Relations • 125 South Clark Street, 13th floor • Chicago, Illinois 60603
Telephone 773/553-1200 • FAX 773/553-1201

Margaret Kostopulos
Director

Sharon Bailey
Deborah A. Brotz
Reshona Duncan
Curtis L. Goodman
Thomas M. Owens
Cheryl Nevins

November 17, 1999

Mr. Gerald Simonsen
703 West Indiana Street
St. Charles, Illinois 60174

Dear Mr. Simonsen:

Pursuant to Section 3 of Board Policy 95-1025-PO1, adopted on October 25, 1995, Teachers and Administrators: Discipline and Discharge, a copy of which is attached, you are hereby notified that the Chief Executive Officer is considering a recommendation to terminate your employment in the Chicago Public Schools. A copy of the proposed charges and specifications is enclosed herewith.

In accordance with the above-cited Board Policy, be advised that a Pre-Suspension Hearing will be convened in the Bureau of Labor and Employee Relations, 125 South Clark Street, 13th Floor, on Tuesday, November 23, 1999 at 9:45 a.m. I have been designated as the Hearing Officer by the Chief Executive Officer. At the hearing, you may be represented by one person of your choice.

If you have any questions, you may contact me or Mr. Curtis Goodman, Field Administrator, at (773) 553-1200.

Sincerely,

*Cheryl Nevins*

Cheryl Nevins

CN:CLG:rdh
Enclosures

cc:  Robert R. Hall, Jr.
     Jose Rodriguez
     Carol Gearring

I received the original letter, a copy of Section 3 of Personnel Policy 95-1025-PO1, and a copy of the proposed charges and specifications on November _____, 1999.

_____
(Gerald Simonsen)

000562

*Children First*

95-1025-PO1

#6
2of2

## Section 3 - Pre-discipline Hearing and Suspension Pending Dismissal

Whenever suspension is being considered against a teacher, the employee shall be given advance written notice that such action is being considered by the principal or chief administrator. The notification shall include a description of and cause for the disciplinary action and the date, time and place when an informal, pre-discipline hearing will be held.

The hearing will be conducted by the principal or chief administrator considering the discipline. At such hearing, the employee will be informed of the proposed charges, provided with an explanation of the basis of the charges, and afforded an opportunity to respond and present his explanation of the applicable facts and circumstances.

The employee may be represented at the hearing upon request by one person of his choice, including an attorney or a union representative. The rules of evidence will not be applied. At the hearing, the employee may make oral or written presentations, which may include the employee's view of the appropriateness or necessity of suspension without pay pending other discipline, if such suspension is being considered, as well as comment on the proposed charges. Any statements of witnesses presented by the employee must be in writing.

After such hearing, the principal or chief administrator will determine what discipline, if any, to impose short of discharge or suspension without pay for more than fifteen (15) days. Suspensions of teachers without pay for one (1) to fifteen (15) days will be reviewed by the Regional Educational Officer upon request of the employee, as provided below. Discharge and suspensions of sixteen (16) to thirty (30) days must be determined by the Chief Executive Officer.

The procedure described in this Section 3 will be followed for suspension of a teacher without pay pending recommended dismissal, except that the notification and pre-discipline hearing will be conducted by the Director of Human Resources or a designee. No other notification or appeal rights shall apply to such suspensions.

## Section 4 - Notification Of Discipline And Appeal Rights

When a principal or chief administrator determines that a suspension without pay is to be imposed, the employee will be notified in writing and on a timely basis of such action. The notification will include a description of and cause for the disciplinary action and the dates on which the employee shall serve the suspension. As appropriate, the employee further will be advised as follows:

4

Exhibit #7

# Types of Disciplinary Action

The types of disciplinary action which may be imposed include the following:

**Reprimand,** which is a censure expressing formal disapproval of the actions of an employee, but carrying no loss of privileges. A reprimand may be verbal or in writing, but in either case is made part of the employee's record.

**Suspension,** which is the temporary removal from employment, accompanied by a concurrent and temporary loss of the privileges of employment, including, but not limited to, salary or wages. The administrator has authority to suspend or to recommend suspension of an employee for thirty (30) days or less.

Principals may also be suspended for up to 30 days for violating the Uniform Principal Performance Contract.

> **Suspensions shall not be issued for behavior that is pedagogical in nature. Unsatisfactory work performance must be addressed pursuant to the Board's various labor agreements and Section 24A of the Illinois School Code, and policies and procedures of the Board.**

**Warning Resolution,** which is a formal written warning, issued by the Board, regarding teacher performance or misconduct deemed to be remediable.

**Discharge,** which is the act of dismissal from employment and the permanent loss of all privileges of employment. Discharge includes the withdrawal of any right to reinstatement from layoff or leave of absence.



CHICAGO PUBLIC SCHOOLS



Exhibit #8

**Paul G. Vallas**
Chief Executive Officer

December 27, 1999

Michael Hernandez, Esq.
General Counsel
Illinois State Board of Education
100 West Randolph Street
Suite 14-300
Chicago, IL 60601

RE:    **Hearing on Charges Approved Against Gerald Simonsen, a
       Teacher Assigned to Thomas Hendricks Academy, and
       Request to Provide a List of Hearing Officers**

Dear Mr. Hernandez:

    In accordance with the provisions of Section 34-85 of the School Code and 23 Ill.
Admin. Code §52.35(c), I am forwarding to you a copy of a letter approving charges
against Gerald Simonsen, the written charges and specifications, and a letter from
Chicago Teacher's Union President Thomas Reese on behalf of Mr. Simonsen requesting
a hearing pursuant to Section 34-85 of the School Code. The last known address of Mr.
Simonsen is: 703 West Indiana Street, St. Charles, Illinois 60174. Please provide us with
a list of impartial hearing officers so that we may begin the selection process.

                                   Sincerely,

                                   Paul G. Vallas
                                   Chief Executive Officer

KAB/
Enclosures
cc:    Marilyn F. Johnson
       Robert R. Hall, Jr.

**Marvin F. Hill, Jr.**

*Arbitrator*

Member Iowa Bar

Exhibit #9

330 North Second St.
DeKalb, Illinois 60115
mhill@niu.edu

April 25, 2001

(815) 753-6308 (Office)
(815) 756-8122 (Home)
(815) 754-4866 (Fax)

James G. Ciesil. Esq
Chicago Board of Education
125 South Clark, Ste 700
Chicago, Illinois 60603

Gerald Simonsen
2922 North Kenosha
Chicago, Illinois 60641

Gentlemen:

I am in receipt of the Board's letter of April 24, 2001, and its motion for denial of a backpay remedy in the event of a decision in favor of Simonsen.

Mr. Simonsen's conduct in this proceeding, including his latest argument regarding notice of the hearing date, is a matter of record which, upon completion of this proceeding, will be forwarded to the Illinois State Board of Education.

I am today requesting the parties to confirm one, or both, of the July hearing dates within two weeks so this matter can be concluded before I start my fall semester.

The Board's motion is taken under advisement pending response from Mr. Simonsen.

Very truly yours,

Marvin Hill, Jr.

cc: Gene Daly

Exhibit # 10
2 pages

## IN THE CIRCUIT COURT OF COOK COUNTY
## COUNTY DEPARTMENT – LAW DIVISION

GERALD SIMONSEN,
    Plaintiff,

    v.                      No. 00 L 50817

ILL. DEPT. OF EMPLOYMENT
SECURITY, et. al.,
    Defendants.

### ORDER

This matter comes before the court for judicial review of a decision of the Board of Review dated July 24, 2000, which found that plaintiff was discharged for misconduct and was not, therefore, entitled to unemployment benefits. Plaintiff was placed on a 15-day suspension at the end of the school day on October 12, 1999. The principal asked him for his grade book and attendance book as he was leaving school. Plaintiff hurried back to his classroom but was able to only locate his attendance book. The lack of a grade book coupled with plaintiff's untimely suspension prevented the school from transmitting grades at the parent conferences set for November 3, 1999. During oral argument plaintiff stated that he subsequently found his grade book at home. There is no evidence that the principal requested that plaintiff send in the grades during his suspension. The Board held that the failure of the plaintiff to have his grade book immediately available at the time of his unforeseen suspension constitutes misconduct.

The main purpose of the Unemployment Insurance Act is to alleviate the economic insecurity and burden caused by involuntary unemployment. *Jones v. Dept. of Employment Security*, 276 Ill.App.3d 281 (1995). While benefits are a conditional right and the burden of establishing eligibility rests with the claimant, the Act must be liberally construed to favor the awarding of benefits. *Kiefer v. Dept. of Employment Security*, 266 Ill.App.3d 1057 (1994). A worker is disqualified for benefits if he willfully violates a reasonable company rule known to him and the violation causes harm to the employer or occurs after repeated warnings in respect to the misconduct. *Zuaznabar v. Board of Review*, 257 Ill.App.3d 354 (1993). Disqualifying misconduct does not include mere insufficiency, ordinary negligence or good faith errors in judgment. *Winklmeier v. Board of Review*, 115 Ill.App.3d 154 (1983). Even though an employee's conduct may justify his discharge, it does not necessarily disqualify him from receiving unemployment benefits. *Pesce v. Board of Review*, 161 Ill.App.3d 879 (1987). Although the work history of an employee is extremely relevant, the acts that ultimately led to a

Ex 10

discharge must constitute misconduct. *London v. Dept. of Employment Security*, 177 Ill.App.3d 276 (1988).

The inability of plaintiff to immediately produce his grade book was due to the fact that he was provided with no notice of his impending suspension. The fact that plaintiff did produce his attendance book shows that he was willing to cooperate despite having just received the despairing news of his suspension. It conceivably could constitute misconduct if plaintiff failed to produce his grade book after receiving reasonable notice of his suspension and the need for the grade book. Under the circumstances of this case, however, the finding of the Board that the acts of plaintiff constitute misconduct is against the manifest weight of the evidence.

Accordingly, the decision of the Board is reversed and plaintiff is entitled to unemployment benefits.

JUDGE THOMAS P. QUINN

NOV 15 2000

Circuit Court-238

_____

**Judge Thomas P. Quinn**

Exhibit # 11
2 pages

January 23, 2001

RE: Property rights demand letter

Trustees – CPS
Paul Vallas – CEO
Marilyn Johnson – Law Dept.

Dear Trustees, Mr. Vallas, Ms. Johnson,

This letter will serve upon the Board of Education a demand to immediately change my salary status with the Chicago Public Schools. This demand includes all back salary, return of salary from previous suspensions, salary lost from coaching positions, lost summer school salary for past three years and a teaching position to be agreed upon by the parties.

My demand is made, in part, for the following:

1) I have vested property rights under the United States Constitution. The Trustees, Mr. Vallas, Ms. Johnson have violated those rights causing great hardship for Gerald Simonsen and his family.

2) My pre-suspension hearing violated my due process rights, as set out by the Supreme Court of the United States.

3) A Circuit Court decision that I was not guilty of charges brought by Vallas/Johnson for misconduct.

4) An administrative hearing at the State Board of Education is thus barred by res judicata from finding any misconduct. Without misconduct, irremediably is moot.

5) Mrs. Bermejo, the Board's attorney has dropped two specifications from Mr. Vallas/Ms. Johnson complaint, as no proof could be found. Nor can proof be found for the other specifications.

6) Mr. Vallas and Mr. Chico have declined to offer testimony at the state hearing as both are without knowledge of the charges.

7) According to the Board's own Discipline policy, Mr. Vallas has authority to suspend employees only up to thirty days. My suspension without pay has lasted thirteen months, causing great economic hardship.

8) At the Administrative Hearing, the Board in "bad faith" petitioned and received a Protective Order from the Hearing Officer, outside of the hearing rules. The Protective Order, prevents many Board employees from being called by the Defense.

9) The Trustees, Mr. Vallas, Ms. Johnson were on notice that the Hendricks Principal was taking unfair, illegal and unequal treatment against a Board employee, and took no corrective action.

10) The Trustees, Mr. Vallas, Ms. Johnson were on notice that Warning Resolutions against Gerald Simonsen were untrue, and took no corrective action.

11) The Trustees, Mr. Vallas, Ms. Johnson were on notice that due process violations of the state statute by the Board against Gerald Simonsen had occurred, and took no corrective action.

EX 11

12) Gerald Simonsen has repeatedly informed the Board of Trustees, Mr. Vallas, and Ms. Johnson that he was not guilty of any misconduct, and they took no corrective action.

For the reasons mentioned I demand my property rights, my back salary and a teaching position, all before February 1, 2001. Nothing in this demand lessens my rights to seek damages through the Court system of the United States.

Sincerely,

Gerald Simonsen
Homeless

Mailing address:
Gerald Simonsen
2922 N. Kenosha
Chicago, IL 60641

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Gerald Simonsen, Ilse Simonsen
Paulette Simonsen, Pamela Simonsen
Christine Simonsen

## DEFENDANTS

Chicago Board of Education,
Paul Vallas, Marilyn Johnson, Jose Rodriguez
Carol Bearing, Cheryl Nevins, Sharon Bailey
Karina Bermejo, James Ciesil, Carlos Ponce
Gwen Smith

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Cook  ×2
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Cook
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**DOCKETED**   01C 3081

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Gerald Simonsen Pro Se
P.O. Box 300754
Chicago, Il 60630-0754

MAY 01 2001

ATTORNEYS (IF KNOWN)  Board of Education  **CHIEF JUDGE ASPEN**
Marilyn Johnson
125 S. Clark St. Suite 700
Chicago, Il 60603  **MAGISTRATE JUDGE ROSEMOND**

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury — Med. Malpractice
- ☐ 365 Personal Injury — Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
  **HABEAS CORPUS:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

### FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS — Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

## VI. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Suit under 42 U.S.C. 1981, 1983, 1985, 1986
violations of constitutional rights
and civil rights, Title VII Civil Rights Acts 1964, 1991

## VII. REQUESTED IN COMPLAINT

- ☒ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**  $8,000,000

CHECK YES only if demanded in complaint
**JURY DEMAND:** ☒ YES  ☐ NO

## VIII. This case

- ☒ is not a refiling of a previously dismissed action.
- ☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE  4/30/01

SIGNATURE OF ATTORNEY OF RECORD  Gerald Simonsen

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

CHIEF JUDGE ASPEN

MAGISTRATE JUDGE ROSEMOND

In the Matter of  Gerald Simonsen, Ilse Simonsen,
Paulette Simonsen, Christine Simonsen, Pamela Simonsen

01C 3081

Case Number:

Chicago Board of Education a Municipal Corp,
and named individuals in their offical and individual capacities under
color of law, Paul Vallas, Marilyn Johnson, Carol Gearring, Jose Rodriguez,
APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:
Cheryl Nevins, Sharon Bailey, Carlos Ponce, Karina Ayala Bermejo, Gwen Smith
and James Ciesil

DOCKETED

APPEARANCE ARE HEREBY FILED BY THE UNDERSIGNED
for Pro Se Plaintiffs - Same Mailing Address

MAY 01 2001

| (A) | (B) |
|---|---|
| SIGNATURE *Gerald Simonsen* | SIGNATURE *Ilse Simonsen* |
| NAME Gerald Simonsen - Pro Se | NAME Ilse Simonsen - Pro Se |
| FIRM | FIRM |
| STREET ADDRESS P.O. Box 300754 | STREET ADDRESS P.O. Box 300754 |
| CITY/STATE/ZIP Chicago, Il 60630-0754 | CITY/STATE/ZIP Chicago, Il 60630-0754 |
| TELEPHONE NUMBER - none - / FAX NUMBER | TELEPHONE NUMBER / FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☐ NO ☒ | TRIAL ATTORNEY? YES ☐ NO ☒ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☒ |

U.S. DISTRICT COURT  01 APR 30 PM 4:00  FILED

| (C) | (D) |
|---|---|
| SIGNATURE *Christine Simonsen* | SIGNATURE *Pamela Simonsen* |
| NAME Christine Simonsen - Pro Se | NAME Pamela Simonsen - Pro Se |
| FIRM | FIRM |
| STREET ADDRESS P.O. Box 300754 | STREET ADDRESS P.O. Box 300754 |
| CITY/STATE/ZIP Chicago, I 60630-0754 | CITY/STATE/ZIP Chicago, Il 60630-0754 |
| TELEPHONE NUMBER / FAX NUMBER | TELEPHONE NUMBER / FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☐ NO ☒ | TRIAL ATTORNEY? YES ☐ NO ☒ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☒ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☒ |