# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3081 | **DATE** | 10/16/2001 |
| **CASE TITLE** | Simonsen vs. Board of Education, etal | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendant's motion to dismiss (12-1) is granted in part and denied in part. We dismiss Paulette, Pamela, Ilse and Christine Simonsen as plaintiffs and deny the motion for preliminary injunction. We deny the plaintiffs' request for punitive damages from te Board. Finally we deny the Board's motion to dismiss the remaining portions of Counts One and Four, and recommend that a motion for summary judgment be filed which may assist in resolving these remaining issues.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | OCT 17 2001 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 10/16/2001 | |
| | | 01 OCT 17 AM 8:08 | date mailed notice |
| GL | courtroom deputy's initials | | GL |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GERALD SIMONSEN, individually and on behalf of )
Paulette Simonsen, Ilse Simonsen, Christine )
Simonsen and Pamela Simonsen, )
)
Plaintiffs, )
)
) Case No. 01 C 3081
v. )
)
BOARD OF EDUCATION OF THE CITY OF )
CHICAGO, et. al. )
)

MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, Chief Judge:

Plaintiffs Gerald, Paulette, Ilse, Christine and Pamela Simonsen (collectively "the Simonsens") have filed a rambling ten-count complaint against the Chicago Board of Education ("the Board") as well as various individuals affiliated with the Board, apparently regarding Gerald Simonsen's ("Gerald") suspension without pay from his job as a teacher for the Chicago Public Schools.[1] The Board has moved to dismiss Counts 1-4 and 7-9 of the complaint as to it as well as the Simonsen's request for a preliminary injunction and punitive damages, and also has moved to dismiss all of the individuals except Gerald as plaintiffs.[2] As we explain below, we grant in part and deny in part the motion.

As far as we can discern, the complaint alleges the following causes of action: Count 1 alleges a violation of the 4th Amendment and procedural due process under the 5th and 14th Amendments and 42 U.S.C. §§ 1981 and 1983 with respect to the hearings and grievance procedure surrounding Gerald's suspension; Count 2 alleges encroachment on Gerald's liberty rights in violation of due process under the 5th and 14th Amendments and 42 U.S.C. §§ 1981 and 1983 with respect to Gerald's suspension

---

[1] On August 14, 2001, we dismissed for lack of jurisdiction Gerald's separately-numbered complaint against the Chicago Teacher's Union alleging failure to represent him in his grievance against the Board of Education.

[2] Also pending before us but not part of this decision are separate motions to dismiss from all of the individual plaintiffs.

from his teaching job; Count 3 alleges that the Board violated the Equal Protection clause of the 14th Amendment and 42 U.S.C. §§ 1981 and 1983 by singling Gerald out for discipline and condoning false testimony about him; Count 4 alleges that the Board and Gerald's principal retaliated against him by filing false disciplinary charges against him after he filed a charge at the EEOC and was part of a committee that gave the principal a poor rating; Count 5 alleges that the Board discriminated against Gerald because of his race; Count 6 alleges that the Board discriminated against Gerald because of his gender; Count 7 alleges that there was a hostile work environment at the school where Gerald was employed causing many teachers there to transfer; Count 8 alleges that the defendants conspired to intentionally deprive Gerald of his rights under the 5th and 14th Amendments and 42 U.S.C. §§ 1981, 1983 and 1985; Count 9 is brought pursuant to the 5th and 14th amendments as well as 42 U.S.C. §§ 1981, 1983, 1985 and 1986 and alleges that the defendants failed to take action to correct the violations against Gerald; and Count 10 alleges that the Board discriminated against Gerald because of his age.

On a motion to dismiss, we must accept as true all "well pleaded" allegations of the complaint, and make all inferences in the light most favorable to the plaintiff. Gillman v. *Burlington Northern Railroad Co.*, 878 F.2d 1020, 1022 (7th Cir. 1989). Because the plaintiff here is pro se, we must construe the complaint liberally when deciding the motion to dismiss. Wilson v. Geisen, 956 F.2d 738, 739 (7th Cir. 1992). The plaintiffs appear to have adopted a "kitchen sink" approach to drafting their complaint – inserting boilerplate legal phrases and theories throughout and repeating facts over and over in the hopes that some of the facts and theories will match up. Although parts of the complaint are not well pled enough to consider, a review of each count, along with the documents the Simonsens attach to the complaint, give us enough of a picture about the allegations to rule on the motion's merits. We will give a brief summary of the facts as we understand them here, and go into more detail where necessary in our discussion of each individual count.[3]

---

[3] One difficulty we have in setting forth the facts as stated by the plaintiff is that at times, the documents the Simonsens attach to their complaint, which become part of the complaint for the purposes of this motion to dismiss, Fed.R.Civ.P. 12(b)(6), contradict their allegations. As we explain below, we cannot accept as true any allegations which are contradicted by any other part of the complaint.

2

The following facts are alleged in the complaint: Gerald has been employed by the Board since 1977, most recently as a teacher at Hendricks Academy, a Chicago public school.[4] Beginning in 1999, he began receiving so called "Warning Resolutions" about deficiencies in his performance as a teacher dating back to 1997. The Resolutions (which are attached to the complaint) warned that failure to correct the deficiencies could result in further discipline. Gerald disputed the issuance of the Warning Resolutions, arguing that they were false and baseless, but the Board did not take any action to correct the allegedly false charges. In October 1999, principal Carol Gearing (an individual defendant) placed Gerald on a fifteen day unpaid suspension because of the deficiencies noted in the Resolutions. Gerald alleges that the real reason for the suspension was his filing of an EEOC charge as well as his membership on the Hendricks Local School Council, which had criticized Gearing. Gerald filed grievances related to the Warning Resolutions and suspension, which were denied after a hearing in September 1999.

At the end of the fifteen day suspension, Gerald was removed from his teaching duties and the Board began dismissal proceedings against him, notifying him that he had the right to a pre-suspension hearing. The Simonsens contend that the pre-suspension hearing was a sham and that the Board did not follow its policies for conducting the hearing in numerous ways. After the pre-suspension hearing, the Board undertook dismissal proceedings against Gerald, which involved scheduling a formal hearing. That hearing has commenced, but has not been concluded, and the Simonsens allege that the Board is to blame for the delay.

## Count One

Count One of the complaint alleges that the entire procedure by which Gerald was given Warning Resolutions, placed on an un-paid fifteen day suspension and later suspended pending a dismissal hearing, was violative of his Due Process rights. Specifically, he contends that his discipline

---

[4] The complaint does not indicate the capacity of such employment. A document attached to the complaint seems to indicate that at the time he was suspended, Gerald taught second grade.

was precipitated by the false Warning Resolutions issued against him, and that the Board's progressive disciplinary procedure was not followed. For a tenured public employee such as Gerald, due process prior to the deprivation of a property right such as a job requires that the employee be given (1) oral or written notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity to tell his side of the story, either in person or in writing. Cleveland *Bd. of Ed. v. Loudermill*, 470 U.S. 532, 546 (1985). So even if we accept as true the Simonsens' allegations that all of the charges brought against Gerald are false, the question we must answer is whether the complaint sufficiently pleads that Gerald was denied due process in trying to vindicate himself.[5]

The Board responds that relevant Illinois School law as well as the Board policies the Simonsens attach to the complaint belie their contentions that the Board did not follow its disciplinary policies with regard to Gerald. In deciding this motion, we may consider any documents attached to the complaint as well as any documents provided by the defendants as long as they are referenced in the complaint and central to the plaintiff's claims. See *Wright v. Associated Insurance Cos., Inc.*, 29 F.3d 1244, 1247 (7th Cir. 1994). First, Gerald contends that a May 1999 hearing regarding his Warning Resolutions which resulted in his fifteen day suspension without pay was a "sham".[6] If this were the only allegation with regard to the suspension, we could infer for the purposes of this motion that this characterization alleges that all of the requirements of due process were not followed before Gerald was suspended for fifteen days. However, attached to the complaint are documents which demonstrate otherwise. A plaintiff may "plead himself out" of a cause of action by alleging facts showing that he is not entitled to judgment. See *Early v. Bankers Life and Casualty Co.*, 959 F.2d 75, 79 (7th Cir

---

[5] This count of the complaint encompasses 85 separate paragraphs and refers to 29 pages of exhibits. Much of this count is difficult to follow, repetitive, and confusing. Thus, we will focus on the major events leading up to Gerald's current dismissal hearing: his September 1999 hearing on his grievances regarding the Warning Resolutions, his October 1999 fifteen day suspension, his suspension pending dismissal which began at the end of the fifteen day suspension, his pre-suspension hearing which occurred November 30, 1999, and the institution of dismissal proceedings against him.

[6] It is unclear from the complaint what the difference was between the May 1999 hearing and the September 1999 hearing. We do know that Gerald participated in a hearing in September 1999 that he calls a "grievance hearing," which resulted in principal Gearing upholding his fifteen day suspension. Regardless of which suspension resulted in Gerald's suspension, our analysis is the same.

4

1992). In this case, the Simonsens attach copies of the Warning Resolutions – which demonstrate that they were informed of the charges against Gerald – as well as two letters to Gerald which discuss and deny his written appeal of the charges and also reference a so-called "Appeal Review" that Gerald had participated in to dispute the charges. Thus, Gerald had the opportunity to hear the charges explained in a formal hearing and to provide his responses, not once, but twice. He cannot now maintain that he was denied due process with respect to the first suspension.

Next we must consider whether Gerald was denied due process with respect to the imposition of an unpaid suspension pending a hearing on his dismissal. This charge is more complicated, and after considering the complaint and its attachments, along with the Board's response, we find that the Simonsens have stated a cause of action for denial of due process. In his complaint, Gerald alleges that he was suspended pending dismissal[7] immediately upon returning from his fifteen day disciplinary suspension. Although we agree with the Board that Chicago Public Schools CEO Paul Vallas is authorized under Illinois law to approve such as suspension pursuant to 105 ILCS 5/34-85, we must accept for purposes of this motion the Simonsen's allegation that the Board did not follow all of its procedures with regard to the imposition of this suspension. First, the Board policy the Simonsens attach to their complaint indicates that prior to any suspension, a teacher shall be given advance notice that such action is being considered. The complaint alleges that Gerald did not receive notice of the proposed suspension until November 12, 1999, although the suspension began on November 3, 1999. Next, the complaint alleges that this suspension lasted longer than 30 days, in violation of the same Board policy, and that the "pre-suspension hearing" that Gerald was afforded under the policy did not follow correct procedures, thus denying him of his due process rights.

In response, the Board argues that the policy on which the Simonsens rely applies only to disciplinary suspensions, not suspensions pending dismissal, and it attaches the "correct" policy for suspensions pending dismissal. This argument fails for two reasons. First, the policy attached to the

---

[7] As will be apparent below, a suspension pending dismissal is somewhat different than a disciplinary suspension, such as the fifteen day suspension Gerald was given in October 1999.

5

Simonsens' complaint does in fact reference suspensions pending dismissal, and indicates that the same procedures (including the pre-suspension notice and 30 day limit) will be followed as for disciplinary suspensions, with the only difference being that the notification and hearing shall be conducted by the Director of Human Resources instead of by the principal or chief administrator. Next, it is not clear that the policy provided by the Board is the same one referenced in the complaint or attached to it. The two policies have different numbering systems and are printed in different fonts. Additionally, the Board policy appears to merely refer back to the policy attached to the complaint. Thus, for the purposes of this motion, we accept the complaint's allegation that Board procedure was not followed with regard to the hearing, in violation of Gerald's due process rights.

The complaint also alleges that during the pre-suspension hearing on November 30, 1999, Gerald was not allowed to tell his side of the matter relevant to his defense and that the Board did not explain the charges. Later in the complaint, plaintiffs contend that Gerald did in fact deny all the charges but that the Board ignored his testimony. This inconsistency effectively pleads the Simonsens out of the allegation that Gerald was not allowed to tell his side of the story, but does not address whether or not he was deprived of due process by not having the charges explained to him. In response, the Board attaches a transcript of the hearing (which the complaint references) to prove that due process was followed and also argues that an informal pre-suspension hearing is acceptable where the law provides for a formal trial-like post deprivation hearing. See *D'Acquisto v. Washington*, 640 F.Supp. 594, 614 (N.D.Ill. 1986). However, determining whether the pre-suspension hearing comported with the requirements of due process would involve a consideration of the merits of the Simonsens' claims. Of course, we cannot consider the merits here, and instead must accept as true the allegations that the Board did not explain the charges to Gerald during the hearing on his suspension pending dismissal proceedings and that the Board ignored his testimony. Although the transcript the Board provides weakens this allegation, it is not unequivocal enough to overturn it, so we will not alter this conclusion at this stage of the proceedings.

Next, the complaint alleges that the Board did not follow correct procedures with regard to the approval of the dismissal charges against Gerald and that it delayed the scheduling of the hearing pending dismissal. Although the Board points out that a letter attached to the complaint hints that it may be the Simonsens – and not the Board – who is the cause of the delay, we cannot be certain from the letter, and thus we will allow this allegation to stand. The Simonsens must understand, however, that if discovery produces evidence that Gerald received due process with regard to his suspensions as required by Board policy and the law, we will entertain a short motion for summary judgment from the Board on this count of the complaint. For now, we accept the Simonsens' contention that Gerald was denied due process with regard to the imposition of his suspension pending dismissal hearing and the conduct of the November 30, 1999 hearing as well as with regard to the scheduling of his formal dismissal hearing. However, we strike that part of count one that alleges a due process claim concerning the imposition of the Warning Resolutions and his October 1999 fifteen day suspension.

Count Two

This count alleges that the Simonsens were deprived of the liberty interest of Gerald being able to remain in the teaching profession by the Board's action of bringing false discipline against Gerald. Basically, the complaint alleges that this discipline damaged Gerald's reputation, making it impossible for him to continue as a teacher. Even if we accept as true that this discipline was wrongly instituted, the Simonsens have not stated a claim for deprivation of a liberty interest. A claim that a government employer has infringed an employee's liberty to pursue the occupation of his or her choice requires that (1) the employee be stigmatized by the employer's actions; (2) the stigmatizing information be publicly disclosed; and (3) the employee suffer a tangible loss of other employment opportunities as a result of the public disclosure. Strasburger v. Board of Ed., Hardin County Comm. Unit Sch. Dist. No. 1, 143 F.3d 351, 356 (7th Cir. 1998).

Although we find that the complaint does allege the loss of other employment opportunities, it fails to plead that any stigmatizing information about Gerald was publicly disclosed. All of the

7

information at issue concerned the purportedly false charges of incompetence as a teacher brought against Gerald. Public statements regarding "charges of professional incompetence do not impose the sort of stigma that actually infringes an employee's liberty interest to pursue an occupation." Lashbrook v. Oerkfitz, 65 F.3d 1339, 1348-49 (7th Cir. 1995). Thus, even if the complaint sufficiently alleged that the Board publicized statements about Gerald's incompetence as a teacher – which it does not – we could not accept them as sufficiently stigmatizing to maintain this cause of action. Count Two is therefore dismissed.

Count Three

Count Three alleges that the Board violated the Equal Protection Clause as brought pursuant to 42 U.S.C. §§ 1981 and 1983. Basically, the count contends that by singling out Gerald for discipline without cause, the Board violated his equal protection rights. Although the Supreme Court has recognized claims for violations of the equal protection clause from a "class of one," Village of Willowbrook v. Olech, 528 U.S. 562 (2000), Count Three of the complaint does not make such an allegation, instead simply stating that Gerald was singled out for discipline. In order to make an allegation as a class of one, the Simonsens would have to contend that he was treated differently from similarly situated individuals for no legitimate reason. However, elsewhere in the complaint, the Simonsens allege that the Board has engaged in sham dismissals of numerous teachers and that others have asked to be transferred away from Hendricks School because of the actions of principal Gearing. Thus, the Simonsens cannot maintain their equal protection claim under a "class of one" theory. Further, Count Five of the complaint, which alleges race discrimination and is not part of this motion to dismiss, also claims violation of the Equal Protection Clause and makes similar allegations that Gerald was singled out for discipline, in that case because of his race. Thus, we will dismiss Count Three as it stands, since all of the allegations are encompassed by those in Count Five, which correctly states an equal protection claim.

8

Count Four

Count Four alleges that the Board retaliated against Gerald in violation of both Title VII and the First Amendment during a variety of events. First, the allegation that principal Gearing retaliated against Gerald in violation of Title VII (by bringing false disciplinary charges against him) because of his participation on the Hendricks Local School Council must be stricken. Title VII protects individuals based on their membership in a protected class such as race, gender or religion, 42 U.S.C. § 2000e-2(a)(1); Gerald's membership in the Local School Council is not so protected by the statute. However, the complaint does state a claim for Title VII retaliation based on Gerald's filing of a charge at the EEOC. Although the Board argues that the issuance of a Warning Resolution is not an "adverse employment action" for Title VII purposes, the complaint also alleges that the Board continued to retaliate by failing to drop the charges against Gerald at the state hearing, which eventually led to his suspension – an adverse employment action. Thus, we find that the complaint states a Title VII retaliation claim.

Next, this count alleges that the Board and principal Gearing also retaliated against Gerald (again by bringing false charges and discipline against him) because he spoke out against the Board at public meetings.[8] It is true that a public employee alleging retaliation for engaging in First Amendment protected activity must first establish that he or she was speaking out on matters of public concern. Connick v. Myers, 461 U.S. 138, 146-147 (1983). Although we suspect that Gerald's statements at the public Board of Education meetings concerned only his own employment, and not true matters of public concern, the complaint is vague enough about the content of the statements to compel an inference in favor of the Simonsens. Thus we find that the complaint does allege a cause of action under the First Amendment.

---

[8] The complaint also alleges that the Board retaliated against Gerald by deciding "to not accept a decision favorable to Gerald Simonsen from the State Hearing Officer." The Board's response indicates that this allegation refers to a favorable decision Gerald received on his claim for unemployment benefits. As the Board points out, no inference of retaliation can be made from this favorable decision because unemployment decisions are not res judicata for any other proceeding or decision. 820 ILCS 405/1900(b).

9

Count Seven

This count of the complaint alleges that the defendants failed to correct the "hostile work environment" at Hendricks School, and that numerous employees have transferred away from the school because of the abuse by principal Gearing. Even reading the complaint liberally, this count does not state a cause of action. A claim of a hostile work environment charges a type of sexual harassment in violation of Title VII. In order to make a claim for hostile work environment sexual harassment, a complaint must allege acts that are "sufficiently severe or pervasive to make the workplace intolerable for the members of the group discriminated against." Minor v. Ivy Tech. State College, 174 F.3d 855, 857-858 (7th Cir. 1999). Not only does the complaint not make any mention of actions that could be construed as sexual harassment, but in order to bring such a claim, the plaintiffs first need to bring the charge before the EEOC within 300 days of the alleged harassment, and receive a Notice of Right to Sue. See Koelsch v. Beltone Elecs. Corp., 46 F.3d 705, 707 (7th Cir. 1995). The Simonsens' mention of a Right to Sue letter concerns only their claims of gender and race discrimination, not sexual harassment. Thus we dismiss Count Seven.

Count Eight

Count Eight invokes the 5th and 14th amendments (presumably the equal protection clauses) as well as 42 U.S.C. §§ 1981[9], 1983[10], and 1985[11]. The crux of this count seems to focus on a single claim that the individual defendants all conspired with the Board to deprive Gerald of his rights by causing "unlawful, adverse employment actions which caused great harm and suffering." (Cplt. ¶ 130). The problem is that in the § 1985 context, "managers of a corporation jointly pursuing its lawful

---

[9] Section 1981 prohibits entities acting under color of state law from discriminating against individuals on the basis of race by denying them certain civil rights.

[10] Section 1983 prohibits state actors from using their authority to deprive individuals of their civil rights.

[11] Section 1985(3) prohibits individuals from conspiring in order to deprive someone of equal protection of the laws.

business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory." Travis *v. Gary Community Mental Health Center*, 921 F.2d 108, 110 (7th Cir. 1990) cert. *denied*, 502 U.S. 812 (1991). This holding has been extended to cover employees and agents of a public school board, finding that they are members of the same collective entity and thus are not individuals who may form a conspiracy in violation of § 1985. See *Wright v. Ill. Dept. of Children and Family Services*, 40 F.3d 1492, 1508 (7th Cir. 1994). The impetus behind the so-called "intracorporate conspiracy doctrine" is to protect employees from conspiracy liability for performing their day-to-day jobs. See *Jefferson v. City of Harvey*, No. 98 C 5834, 2000 WL 15097 (N.D.Ill., Jan. 5, 2000). It recognizes that employees or members of a corporate or public entity cannot conspire with themselves to deprive another of his or her rights. Although the Seventh Circuit has not held whether the doctrine also applies to conspiracy claims under §§ 1981 and 1983, several district courts have found that in the context of public school employees accused of discrimination or retaliation, the doctrine applies to bar § 1983 conspiracy claims, a holding we follow here as well. *See, e.g., Doe v. Bd. of Ed. of Hononegah Community High Sch. Dist. No. 207*, 833 F.Supp. 1366, 1381-82 (N.D.Ill. 1993). We have not been able to find any cases regarding the application of the doctrine to § 1981 cases. However, we believe that the same principals that support the application of the intracorporate immunity doctrine to the §§ 1985 and 1983 context support it in the § 1981 context as well. The Simonsens contend that the individual defendants all conspired with the Board to deprive Gerald of various rights and privileges because of his race. It would be anomalous to hold that such a conspiracy could not exist for §§ 1985 or 1983 purposes, but that it could for § 1981 claims, since the facts underlying all three allegations are identical. Thus, we dismiss Count Eight in its entirety.

Count Nine

Count Nine links together many of the previous allegations of false discipline, failure to take corrective action, and conspiracy and alleges that they violate the 5th and 14th Amendments and 42

11

U.S.C. §§ 1981, 1983, 1985 and 1986. Section 1986 states that any individual who knows of a wrong about to be committed under § 1985, and who has the power to stop or correct it and fails to do so, is liable under that section. Since we have found that plaintiffs cannot maintain a § 1985 claim against the defendants, we must dismiss this count as well.

Preliminary Injunction

We deny the Simonsens' request for a preliminary injunction ordering the Board to either return Gerald to his teaching position or convert his suspension to one with pay because even accepting all of their allegations as true, they have not stated a claim which warrants such relief. In order to obtain a preliminary injunction, a plaintiff must demonstrate: 1) a likelihood of success on the merits; 2) no adequate remedy at law; 3) it will suffer irreparable harm if the injunction is denied; 4) the plaintiff's irreparable harm is greater than the harm to the opposing party if the injunction is granted; and 5) that the public interest favors such an injunction. See Ferrell v. U.S. Dept. of Housing and Urban Dev., 186 F.3d 805 (7th Cir. 1999). Even without addressing the likelihood of success on the merits, we must deny the request for preliminary injunction because the Simonsens have an adequate remedy at law. If they are successful in their suit against the Board, the Board must fully compensate Gerald for his lost salary, and he is entitled to reinstatement as well. 105 ILCS 5/34-85 Further, as the Board points out "a temporary deprivation of employment does not inflict irreparable injury, and therefore does not justify a preliminary injunction." *Shegog v. Bd. of Ed. of the City of Chicago*, 194 F.3d 836, 839 (7th Cir. 1999) citing Sampson v. Murray, 415 U.S. 51, 89-92 (1974).

Standing of Individual Plaintiffs Other than Gerald

The Board has also moved to dismiss all of the plaintiffs other than Gerald – namely his children and former wife – for lack of standing. We agree that Paulette, Ilse, Christine and Pamela Simonsen are not proper plaintiffs in this matter because nothing in the complaint alleges that any defendant took any action against them. In order to have standing to sue in federal court, an individual must show that her

12

or she has suffered "injury in fact," that the challenged action caused the injury, and that the injury can likely be redressed by the cause of action. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). Gerald's relatives do not fit this description. That they may be indirectly suffering the consequences of his being suspended does not create standing; they cannot show any deprivation of a constitutional or statutory right because of the Board's alleged actions or that the Board's suspension of Gerald is the cause of their current financial difficulties. To hold otherwise would allow any plaintiff who is suing over a lost job to add all of his or her dependents as plaintiffs, since most of these cases arguably have an effect on the plaintiff's family members as well.

Fifth Amendment Violations

We appreciate the thorough job the Board has done in analyzing all of the possible claims that could arise from the complaint. With regard to any possible Fifth Amendment claims other than those mentioned above, or § 1983 claims for malicious prosecution, we do not believe the complaint adequately states such causes of action and thus do not need to consider whether to dismiss them.

Punitive Damages

The Board argues that as a municipality, it cannot be held liable for punitive damages under §§ 1981, 1983, 1985 or Title VII. We agree. *See Newport v. Fact Concerts Inc.,* 453 U.S. 247, 271 (1981) (punitive damages are not available against a municipality in a § 1983 suit). Furthermore, the Illinois Local Governmental and Governmental Employees Tort Immunity Act bars the imposition of punitive damages against local public entities, such as the Board of Education 745 ILCS 10/1-101 et.seq.; 745 ILCS 10/2-102.

CONCLUSION

For the above reasons, we grant the Board's motion to dismiss Counts Two, Three, Seven, Eight and Nine of the complaint as well as strike the portion of Count One alleging due process violations

13

connected to Gerald's fifteen day suspension and the portion of Count Four alleging Title VII retaliation because of his participation in the Hendricks local school council. Further, we dismiss Paulette, Pamela, Ilse and Christine Simonsen as plaintiffs and deny the motion for preliminary injunction. We deny the plaintiffs' request for punitive damages from the Board. Finally, we deny the Board's motion to dismiss the remaining portions of Counts One and Four, and recommend that a motion for summary judgment be filed which may assist in resolving these remaining issues. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated 10/16/01

14