

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3081 | **DATE** | 2/13/2002 |
| **CASE TITLE** | Gerald Simonsen vs. Board of Education | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Board's motions to dismiss are granted in part and denied in part. Plaintiff's motions for default judgment (61-1, 62-1, 63-1) are denied Plaintiff's motion to alter or amend order of 10/16/01 (64-1) and plaintiff's motion to vacate Chicago Board of Education vote (76-1) are moot in light of this opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

| GL | courtroom deputy's initials | |
|---|---|---|

FEB 14 2002

number of notices

date docketed

docketing deputy initials

2/13/2002
date mailed notice

GL

mailing deputy initials

**Document Number**

CLERK U.S. DISTRICT COURT

02 FEB 13 PM 3: 40

Date/time received in central Clerk's Office

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GERALD SIMONSEN, )
)
        Plaintiffs, )
)
    v. )      Case No. 01 C 3081
)
)
BOARD OF EDUCATION OF THE CITY OF )
CHICAGO, et. al. )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, Chief Judge:

    Plaintiff Gerald Simonsen, a tenured teacher in the Chicago Public Schools ("CPS"), was twice suspended and then eventually dismissed by the Chicago Board of Education ("Board"). Simonsen sued the Board and a number of its employees, charging that his suspensions and dismissal were unlawful for a variety of reasons. Presently before us are motions to dismiss the complaint by the Board[1] and several of its employees[2] as well as two motions for default judgment. For the reasons presented below, the motions to dismiss are granted in part and denied in part, and the motions for default judgment are denied.

## FACTUAL BACKGROUND

    The following factual allegations are taken from the complaint and are deemed true for the purposes of the motions to dismiss. Simonsen,[3] a tenured teacher in the CPS, has been employed by

---

[1] Although we previously ruled on the Board's motion to dismiss, see *Simonsen v. Bd. of Educ. of the City of Chicago*, 2001 WL 1250103 (N.D.Ill. Oct. 17, 2001), we later vacated this opinion. *See Simonsen v. Bd. of Educ. of the City of Chicago*, No. 01-C-3081 (N.D.Ill. Nov. 13, 2001).

[2] Each of the Board employees has filed a separate motion to dismiss, creating a virtual mountain of often duplicative paper. Since these employees are all represented by Board attorneys, we strongly encourage them to file joint briefs in the future in order to avoid unnecessary duplication.

[3] Simonsen was joined by four relatives in his complaint. On November 8, 2001, we held that Simonsen's relatives lacked standing to pursue his claims and dismissed the complaint with respect to them. See Simonsen v. Bd. of Educ. of the City of Chicago, No. 01-C-3081 (N.D.Ill. Nov. 8, 2001).

the Board since 1977, most recently at Hendricks Academy. In April 1999, he received a "Warning Resolution" about deficiencies in his performance as a teacher dating back to 1997. See Compl. Ex. 1. The warning cautioned that failure to correct the deficiencies could result in dismissal. Simonsen disputed the issuance of the warning, claiming that the charges were baseless, but the Board did not withdraw the charges.

In May 1999, Carol Gearring, the principal of Hendricks Academy, recommended that Simonsen be suspended for fifteen days without pay for disciplinary problems. Simonsen claims that Gearring's recommendation was in retaliation for a complaint he filed with the EEOC in 1998 and for his membership on the Hendricks Local School Council, which had given Gearring a poor performance review. Simonsen appealed his suspension and filed a grievance against Gearring. A conference on both matters was held on September 2, 1999, with Cheryl Nevins, an employee of the Bureau of Labor and Employee Relations of the CPS, serving as the hearing officer. Simonsen alleges that this hearing was a sham because the decision to suspend him had been made prior to the hearing. Shortly thereafter, Simonsen received letters from Paul Vallas, the Chief Executive Officer of the CPS, denying his grievance, and Carlos Ponce, the Chief Human Resources Officer of the CPS, denying the appeal of the suspension. Simonsen served the fifteen day suspension in October 1999.

Meanwhile, in June 1999, Gearring recommended that Simonsen be dismissed, and Marilyn Johnson, the director of the CPS Law Department, began to prepare for his dismissal. Simonsen claims that Johnson and Vallas approved the issuance of a second Warning Resolution as a pretext for his termination. Simonsen informed the Board, with Vallas, Johnson, and Jose Rodriguez[4] in attendance, that the charges were false and that Gearring was retaliating against him, but the Board did not withdraw the second warning.

On November 3, 1999, the day after his fifteen day suspension ended, Simonsen called in sick to work. When Simonsen reported for work the next day, Rodriguez sent a representative to remove him from the premises. On November 12, 1999, Vallas approved dismissal charges against Simonsen,

---

[4]Simonsen's complaint fails to indicate what position Rodriguez holds in the CPS.

notified him of his right to a pre-suspension hearing, and tentatively scheduled a dismissal hearing for December 6, 1999.[5] *See* Compl. ¶ 43; Compl. Ex. 5. A pre-suspension hearing was held on November 30, 1999, with Sharon Bailey, an employee of the Bureau of Labor and Employee Relations, serving as the hearing officer. Simonsen contends that the hearing was a sham, that the charges were not explained to him as required by Board policy, that he was not allowed to testify or present written evidence, and that Bailey was not impartial because she worked for Vallas and she had contact with Gearring prior to the hearing. On December 6, 1999, Simonsen was suspended without pay pending his dismissal hearing.

The dismissal hearing commenced under the direction of Illinois State Board of Education Hearing Officer Marvin Hill. Karina Ayala-Bermejo and James Ciesel, attorneys employed by the Board, were assigned to prosecute Simonsen's dismissal hearing.[6] Simonsen maintains that they knew or should have known that false testimony was being given but that they did nothing about it. Moreover, he claims that Bermejo gave false information to Hill. Simonsen blames the Board and Vallas for delays in the commencement and completion of this hearing, which finally ended in October 2001. Finally, Simonsen charges that the dismissal hearing was a farce. See Statement of Pl. (Nov. 26, 2001), Ex. 1 at 2. On November 15, 2001, Hill issued a report recommending that Simonsen be dismissed, and on December 19, 2001, the Board accepted Hill's recommendation and dismissed Simonsen.

Simonsen has filed a 10-count complaint against the Board and the following Board employees in both their official and individual capacities: Vallas, Ponce, Gearring, Bailey, Nevins, Bermejo, Ciesel,

---

[5]Under the Illinois School Code, a teacher facing dismissal has the right to a dismissal hearing upon his request. Pending this dismissal hearing, a teacher "may be suspended in accordance with rules prescribed by the board but such person, if acquitted, shall not suffer any loss of salary by reason of the suspension." 105 ILCS 5/34-85. The Board's Personnel Policy requires that a teacher suspended without pay pending a dismissal hearing also be given a pre-suspension hearing. *See* Compl. Ex. 2 at 4.

[6]Simonsen's complaint does not clearly define Bermejo and Ciesel's role in this case. In their responsive pleading, Bermejo and Ciesel claim that they were assigned to prosecute Simonsen's dismissal hearing. *See* Mot. to Dismiss (Bermejo) at 7; Mot. to Dismiss (Ciesel) at 7. Since the factual allegations of Simonsen's complaint are consistent with this description of Defendants' role, and since Simonsen's response fails to dispute this description, we accept it as true for purposes of this motion to dismiss.

Johnson, Rodriguez, and Gwen Smith.[7] Count 1, brought pursuant to 42 U.S.C. §§ 1981 and 1983, alleges a violation of his right to procedural due process with respect to the suspension and dismissal hearings. Count 2, brought pursuant to 42 U.S.C. §§ 1981 and 1983, alleges encroachment on liberty rights protected under the 14th Amendment. Count 3, brought pursuant to 42 U.S.C. §§ 1981 and 1983, alleges that he was singled out for discipline in violation of the Equal Protection Clause of the 14th Amendment. Count 4, brought pursuant to Title VII and 42 U.S.C. §§ 1981 and 1983, contends that he was suspended in retaliation for filing a complaint with the EEOC and for participating in the decision by the Hendricks Local School Council to give Gearring a poor performance review. Count 5 claims that he was discriminated against because of his race in violation of Title VII and the Equal Protection Clause of the 14th Amendment. Count 6 alleges that he was discriminated against because of his sex in violation of Title VII. Count 7 maintains that there was a hostile work environment at Hendricks Academy. Count 8, brought pursuant to 42 U.S.C. §§ 1981, 1983 and 1985, asserts that the defendants conspired to intentionally deprive him of his rights under the 14th Amendment. Count 9, brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and 1986, contends that the defendants failed to take action to correct the violations against him in violation of rights protected by the 14th Amendment. Count 10 alleges that he was discriminated against because of his age in violation of the Age Discrimination in Employment Act (ADEA). Simonsen seeks compensatory and punitive damages as well as a preliminary injunction requiring the Board to reinstate him.

The Board has moved to dismiss Counts 1-4 and 7-9 of the complaint as well as Simonsen's request for a preliminary injunction and punitive damages. Gearring, Bailey, Nevins, Ciesel, Bermejo, Johnson, and Rodriguez have moved to dismiss the complaint in its entirety. Neither Vallas nor Ponce has responded to the complaint, and Simonsen has moved for default judgment against them.[8]

---

[7]Simonsen originally filed this complaint on April 30, 2001. The Board and several employees filed motions to dismiss, but we stayed proceedings until the completion of the dismissal hearing and the decision by the Board to dismiss or retain Simonsen. See Simonsen v. Bd. of Educ. of the *City of Chicago*, No. 01-C-3081 (N.D.Ill. Nov. 13, 2001); Simonsen *v. Bd. of Educ. of the City of Chicago*, No. 01-C-3081 (N.D.Ill. Dec. 5, 2001).

[8]Although Simonsen also named Gwen Smith as a defendant in his complaint, she has not responded to the complaint and he has not pursued default judgment against her.

## DISCUSSION

### A. Standard of Review

For the purposes of a motion to dismiss, we must accept all well-pled allegations as true and construe the complaint in a light most favorable to the plaintiff. *MCM Partners, Inc. v. Andrew-Bartlett & Assocs., Inc.*, 62 F.3d 967, 972 (7th Cir. 1995). Because the plaintiff here is pro se, we must construe the complaint liberally. *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). We may dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts to support the allegations in his complaint. *Slaney v. Intern. Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). However, a plaintiff may "plead himself out" of a cause of action by alleging facts which show that he is not entitled to judgment. Early v. Bankers *Life and Casualty Co.,* 959 F.2d 75, 79 (7th Cir 1992).

We note that Simonsen has attached numerous exhibits to his complaint. Under Federal Rule of Civil Procedure 10(c), "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." We may therefore consider these exhibits for purposes of the motions to dismiss. Wright v. Associated Ins. Companies, Inc., 29 F.3d 1244, 1247 (7th Cir. 1994).

### B. The Board's Motion to Dismiss

The Board has moved to dismiss Counts 1-4 and 7-9 of the complaint and Simonsen's request for a preliminary injunction and punitive damages. We dismiss Counts 2-3 and 7-9 in their entirety, and we find that Simonsen is not entitled to a preliminary injunction or punitive damages. We find that Simonsen is entitled to proceed with regard to certain allegations in Counts 1 and 4.

### 1. Count 1

Count 1 alleges that the three hearings leading to Simonsen's two unpaid suspensions and dismissal deprived him of property without due process of law. To state a procedural due process claim

under § 1983,[9] a plaintiff must allege that a state actor[10] deprived him of a protected property interest[11] without due process of law. *See Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996). For a tenured public employee like Simonsen, due process prior to an employment deprivation generally requires that the employee be given oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity to tell his side of the story, either in person or in writing. *See Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 546 (1985). Simonsen alleges that the September 1999 hearing on his fifteen day suspension, his November 1999 pre-dismissal suspension hearing, and his dismissal hearing all violated this standard.

We observe at the outset that it is somewhat difficult to determine the exact nature of Simonsen's complaint against the Board. Simonsen does not claim that the Board's procedures as written violate due process,[12] nor does he allege that the Board has an informal custom or policy of violating teachers' rights.[13] Rather, Simonsen accuses the Board of failing to take corrective action when notified of wrongful actions taken against him by Vallas and other Board employees. *See, e.g.,* Compl. ¶ 17 ("The Board of Education was informed, [sic] repeatedly of their policy violations and constitutional violations toward tenured employees, yet took no corrective action."). The Board may be

---

[9]Although Simonsen brings this count pursuant to both §§ 1981 and 1983, a due process violation under § 1983 is the essence of Count 1.

[10]The Board does not dispute that it acts under color of state law.

[11]The Board apparently concedes that Simonsen's suspensions and dismissal deprived him of a protected property interest.

[12]Nor could he make this claim. The Board's Personnel Policy states that before a teacher is suspended, the teacher must be given a pre-suspension hearing at which he is "informed of the proposed charges, provided with an explanation of the basis of the charges, and afforded an opportunity to respond and present his explanation of the applicable facts and circumstances." Compl. Ex. 2 at 4. This policy provides tenured teachers with all the process that is due prior to an employment deprivation. *See Loudermill*, 470 U.S. at 546 (in pre-deprivation hearing, "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story").

[13]Indeed, Simonsen claims that Vallas and Johnson are the policymakers responsible for a "political and economic policy" of illegal teacher dismissals. See Comp. ¶ 7 ("Defendants Vallas and Johnson are by custom and practice policymakers of the Board."); Compl. ¶ 19 ("Board policymakers view teacher dismissals as needed political and economic policy.").

6

subject to supervisory liability if it knew about the illegal conduct and "facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what [it] might see." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). Therefore, if the Board acted or failed to act either "knowingly or with deliberate, reckless indifference," id. 992-93, it may be held liable under § 1983.[14]

Simonsen first contends that the September 1999 hearing regarding his fifteen day suspension was a "sham" because the decision to suspend him had already been made by Ponce. *See* Compl. ¶¶ 34-37. Although the hearing procedures complied with *Loudermill*, the allegation that the hearing was a sham is sufficient to state a procedural due process claim. *See Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 503 (7th Cir. 1999) (holding that "sham procedures do not satisfy due process"). Therefore, to the extent that the Board was deliberately and recklessly indifferent about the alleged sham nature of the suspension hearing or was aware but chose to do nothing, the Board may be held liable under § 1983 for violating Simonsen's right to due process.

Second, Simonsen claims that the November 1999 pre-dismissal suspension hearing deprived him of property without due process of law. Although he received a hearing before Bailey, an employee of the Bureau of Labor and Employee Relations of the CPS, he claims that the dismissal charges were not explained to him, that no evidence for the charges was presented, that he was not allowed to present a defense, that Bailey was biased against him, that the hearing was a sham, and that the Board knew about these violations but chose to do nothing. See Compl. ¶¶ 46-50, 54. Even if all of these allegations are true, however, we cannot allow these claims to proceed. Simonsen's pre-dismissal

---

[14]One of Simonsen's most persistent allegations is that the Board and its employees failed to follow Board policy with regard to his suspensions and dismissal. However, the alleged failure to comply with Board policy is irrelevant to the due process inquiry. *See Levenstein v. Salafsky*, 164 F.3d 345, 351 (7th Cir. 1998) (university not constitutionally required "to follow the letter of its own procedures"); Zykan *v. Warsaw Community School Corp.*, 631 F.2d 1300, 1307 (7th Cir. 1980) ("it is highly questionable whether . . . [informal Board policy] . . . could achieve the status of a constitutionally enforced due process restraint on Board action"); *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 522 (10th Cir. 1998) ("a university's failure to follow its established guidelines in overseeing a grievance does not in and of itself implicate constitutional due process concerns") (quotations omitted). The issue is not whether the Board and its employees followed Board policy, but whether the actions they took satisfied due process requirements.

suspension hearing, no matter how flawed, was followed by a full evidentiary dismissal hearing.[15] At this dismissal hearing, an independent state hearing officer determined that the Board's charges were true and recommended Simonsen's dismissal. We cannot award Simonsen compensatory damages for alleged procedural violations in his pre-dismissal suspension hearing now that the suspension has been upheld by an independent hearing officer. Now that the Board has accepted the hearing officer's recommendation and terminated Simonsen, the only remedy he could pursue for procedural errors in the pre-dismissal suspension hearing is nominal damages, but he has not sought such damages. *See Prato v. Bd. of Educ. of the City of Chicago*, 202 F.3d 274 (7th Cir. 1999) (unpublished opinion). We therefore dismiss these claims as moot.

Third, Simonsen vaguely contends that his dismissal hearing violated his due process rights. In Strasburger *v. Board of Educ., Hardin County Comm. Unit Sch. Dist. No. 1*, 143 F.3d 351 (7th Cir. 1998), the Seventh Circuit held that in order to charge a school board with a "random and unauthorized" employment termination, a plaintiff must demonstrate that state post-deprivation remedies are constitutionally inadequate.[16] I*d.* at 358 (citing Parratt *v. Taylor*, 451 U.S. 527, 540-41 (1981)). Like the plaintiff in Strasburger, Simonsen has not alleged that Illinois post-deprivation remedies are inadequate, nor can he – under the Illinois School Code, a teacher who is dismissed may seek judicial review of the hearing officer's findings under Illinois' Administrative Review Law. *See* 105 Ill. Comp. Stat. Ann. 5/34-85 e*t seq.* Since he cannot allege that his post-deprivation remedies are inadequate, we dismiss Simonsen's claims with regard to his dismissal hearing.

---

[15]A dismissal hearing under the Illinois School Code substantially resembles an actual civil or criminal trial. The hearing is conducted by an impartial hearing officer selected through a procedure designed to ensure his disinterestedness. The school superintendent bringing the dismissal charge is represented by attorneys who present documentary and testimonial evidence to support the charge. The teacher has the right to be present at the hearing with counsel, to present defenses to the charges, to offer his own evidence and witnesses, and to cross-examine the superintendent's witnesses. The hearing officer is empowered to issue subpoenas to require the attendance of witnesses upon the request of the superintendent or the teacher. Testimony is taken under oath, and the hearing is transcribed. After the hearing has concluded, the hearing officer must issue a report detailing his findings of fact and his recommendation to the school superintendent. *See* 105 Ill. Comp. Stat. Ann. 5/34-85 et seq.

[16]Despite a powerful dissent, S*trasburger* has not been overruled nor even questioned in subsequent Seventh Circuit opinions.

Simonsen has stated a procedural due process claim against the Board with regard to his September 1999 suspension hearing, but his due process claim with regard to his November 1999 pre-dismissal suspension hearing is moot and he has failed to state a due process claim with regard to his dismissal hearing.

## 2. Count 2

Count 2 alleges that the false disciplinary charges brought by the Board against Simonsen deprived him of his liberty interest in employment in the teaching profession by so damaging his reputation as to make it impossible for him to continue as a teacher. Even if the disciplinary charges were false, however, Simonsen has not stated a claim for deprivation of a liberty interest under § 1981 or § 1983.

A claim that a government employer has infringed an employee's liberty to pursue the occupation of his or her choice requires that: (1) the employee be stigmatized by the employer's actions; (2) the stigmatizing information be publicly disclosed; and (3) the employee suffer a tangible loss of other employment opportunities as a result of the public disclosure. S*trasburger*, 143 F.3d at 356. According to the complaint, the only stigmatizing information disclosed by the Board concerned false disciplinary charges. This information, however, even if publicly disclosed, is not stigmatizing. Public statements regarding "charges of professional incompetence do not impose the sort of stigma that actually infringes an employee's liberty interest to pursue an occupation." *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1348-49 (7th Cir. 1995). Simonsen has pled facts which demonstrate that he is not entitled to judgment. *See Early*, 959 F.2d at 79 (a plaintiff may "plead himself out" of a cause of action by alleging facts showing that he is not entitled to judgment). Count 2 is therefore dismissed.

## 3. Count 3

Count 3 alleges that the Board violated Simonsen's right to equal protection by singling him out for discipline without cause.[17] The Supreme Court has recognized equal protection claims by a "class

---

[17]Although Simonsen brings this count pursuant to both §§ 1981 and 1983, an equal protection violation under § 1983 is the essence of Count 3.

of one." *See Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). In order to state a claim as a class of one, the plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564. Although Simonsen alleges that the Board singled him out for discipline, elsewhere in the complaint he claims that the Board has engaged in similar dismissals of numerous teachers. *See* Compl. ¶¶ 19-20.[18] This admission that he was *not* treated differently from other similarly situated teachers pleads him out of an equal protection claim under a "class of one" theory. See Early, 959 F.2d at 79.

Simonsen, however, may still be able to make out an equal protection claim under a different legal theory. *See Kennedy v. Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999) (a complaint does state a claim even if brought under wrong legal theory if relief is possible under any set of facts consistent with the allegations). Indeed, in Count 5, which the Board has not moved to dismiss, Simonsen alleges racial discrimination under the Equal Protection Clause. Since Count 5 states a valid equal protection claim, Count 3 is redundant and is therefore dismissed.


## 4. Count 4

Count 4 alleges that the Board retaliated against Simonsen when he chose to exercise certain statutory and constitutional rights. First, Simonsen claims that the Board violated Title VII by issuing his April 1999 Warning Resolution in retaliation for an EEOC complaint he filed in 1998. Second, Simonsen maintains that the Board violated his First Amendment rights by retaliating against him for public comments he made at the Board's public meetings. We find both of Simonsen's allegations sufficient to state a claim for retaliation.

Under Title VII, 42 U.S.C. § 2000e-3(a), a plaintiff states a prima facie case for retaliation by showing that he complained about the discrimination covered by Title VII, that he suffered an adverse employment action, and that there was a causal link between his complaint and the adverse action.

---

[18]Simonsen charges that "Board policymakers view teacher dismissals as needed political and economic policy." Compl. ¶ 19. He cites statistics showing that from 1991 to 1995, the Board dismissed fewer than 30 teachers, but from 1996 to 2000, the Board dismissed more than 400 teachers. Compl. ¶ 20.

*See Hall v. Bodine Elec. Co.*, 276 F.3d 345, 357 (7th Cir. 2002). The Board rightly argues that the issuance of a warning alone is not an adverse employment action for Title VII purposes. Indeed, the Seventh Circuit has held that reprimands which do not have tangible job consequences are not adverse employment actions. *See Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998). But Simonsen's warnings did have tangible job consequences – as a result of this and subsequent warnings, he was eventually suspended without pay and then dismissed. Moreover, Simonsen also alleges that the Board's failure to drop the charges against him in subsequent hearings was further retaliation for his 1998 EEOC complaint. These allegations are sufficient to state a claim for retaliation under Title VII.

Under § 1983, a public employee alleging retaliation for engaging in First Amendment protected activity must establish that he was speaking out on matters of public concern. *Connick v. Myers*, 461 U.S. 138, 146-147 (1983). To the extent that Simonsen's statements at the Board's public meetings concerned only his own employment, they were not true matters of public concern and therefore cannot constitute the basis of a retaliation claim. *See Wallscetti v. Fox*, 258 F.3d 662, 667 (7th Cir. 2001) ("speech relating to only the effect an employer's action has on the speaker is not shielded by the First Amendment, since it rarely involves a matter of public concern"). However, the complaint is vague enough about the content of these statements to warrant further proceedings on this issue. We therefore find that Simonsen has stated a claim for retaliation under the First Amendment.[19]

## 5. Count 7

Count 7 alleges that the Board failed to correct the "hostile work environment" at Hendricks Academy and that numerous employees have transferred away from the school because of abuse by

---

[19]Simonsen also alleges that the Board retaliated against him for public comments he made at the Board's public meetings by deciding "to not accept a decision favorable to [him] from the State Hearing Officer." Compl. ¶ 106. This allegation refers to a favorable decision Simonsen received from an Illinois circuit court on his claim for unemployment benefits. *See* Compl. Ex. 10. As the Board notes, however, no inference of retaliation can be made from this favorable decision because unemployment decisions are not res judicata for any other judicial proceeding under Illinois law. *See* 820 ILCS 405/1900(b) ("No finding . . . issued pursuant to this Act . . . shall . . . constitute res judicata"). Moreover, the decision to exercise a legal right of appeal cannot be considered retaliation.

Gearring. A hostile work environment claim charges a type of sexual or racial harassment in violation of Title VII. Simonsen, however, does not identify the statutory basis for this count or the legal theory motivating his claim, and the Board suggests that this count must therefore be dismissed.

In his response brief, Simonsen asserts that this count is brought pursuant to Title VII. Ordinarily a plaintiff may not amend a complaint through its briefs in opposition to a motion to dismiss. See *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). We need not decide whether this rule should be rigorously applied to pro se plaintiffs, however, because the amended pleading is still insufficient. Simonsen's complaint must give the Board adequate notice of his claim. By failing to state whether his claim is racial or sexual harassment (or both), he has failed give the Board adequate notice of his claim and it must therefore be dismissed. *See Scott v. City of Chicago*, 195 F.3d 950, 952 (7th Cir. 1999) (upholding dismissal where lack of "minimum factual allegations . . . failed to provide minimum notice of the gravamen of the plaintiff's claim").

## 6. Count 8

Count 8, brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1985, charges the Board and all of the individual defendants with conspiracy to deprive Simonsen of his property right in continued employment. Under the intracorporate conspiracy doctrine, however, neither a corporation nor its managers may be held liable for conspiracy under § 1985 for actions taken within the scope of the corporation's business. *See Travis v. Gary Cmty. Mental Health Center*, 921 F.2d 108, 109-10 (7th Cir. 1990). The Seventh Circuit has not decided whether the doctrine also applies to conspiracy claims under §§ 1981 and 1983. Several district courts, however, have found that the doctrine applies to bar § 1983 conspiracy claims, a holding we follow here. *See, e.g., Doe v. Bd. of Ed. of Hononegah Community High Sch. Dist. No. 207*, 833 F.Supp. 1366, 1382 (N.D.Ill. 1993). Moreover, we believe that the principles which support the intracorporate immunity doctrine's application to §§ 1983 and 1985 conspiracy claims extend to conspiracy claims under § 1981 as well. Given the common historical origin of these statutes, it would be inconsistent to hold that a conspiracy

could not exist for §§ 1983 or 1985 purposes, but that it could for § 1981 claims. We therefore dismiss Count 8 in its entirety.

## 7. Count 9

Count 9, brought pursuant to § 1986, alleges that the Board was aware of the conspiracy against Simonsen but failed to prevent it. Under § 1986, any individual who knows of a conspiracy prohibited under § 1985, and who has the power to stop or correct it and fails to do so, is liable for any resulting damages. Since we held above that Simonsen cannot maintain a § 1985 conspiracy claim against the Board, we dismiss this count as well.

## 8. Preliminary Injunction

Simonsen has requested a preliminary injunction requiring the Board to return him to his teaching position. In order to obtain a preliminary injunction, a plaintiff must demonstrate: 1) a likelihood of success on the merits; 2) no adequate remedy at law; 3) irreparable harm if the injunction is denied; 4) that the plaintiff's irreparable harm is greater than the harm to the opposing party if the injunction is granted; and 5) that the public interest favors such an injunction. *See Ferrell v. U.S. Dept. of Housing and Urban Dev.*, 186 F.3d 805 (7th Cir. 1999). Simonsen, however, does have an adequate remedy at law – the Illinois School Code provides for judicial review of the discharge decision. *See* 105 Ill. Comp. Stat. Ann. 5/34-85 et seq. We therefore deny Simonsen's request for a preliminary injunction.

## 9. Punitive Damages

Simonsen seeks punitive as well as compensatory damages from the Board. As a municipal corporation, however, the Board cannot be held liable for punitive damages under Title VII or § 1983. See *City of Newport v. Fact Concerts Inc.*, 453 U.S. 247, 271 (1981) (punitive damages are not available against a municipality in a § 1983 suit). Therefore, if Simonsen prevails on his remaining claims against the Board, he will not be entitled to punitive damages.

## C. The Employees' Motions to Dismiss

Simonsen sued Gearring, Bailey, Nevins, Ciesel, Bermejo, Johnson, and Rodriguez in their individual and official capacities. These defendants have each moved to dismiss the complaint in its entirety.

### 1. Official Capacity

Simonsen has sued each of the Board employees in both their individual and official capacities. In order to state a claim against a government employee in his official capacity, that employee must "speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998) (quoting Jett v. *Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Whether a government employee has final policymaking authority is determined by state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).

None of these defendants have final authority over CPS policy. The Illinois School Code gives a school district's board of education "full power to manage the schools and to adopt all rules and regulations needed for that broad purpose." *Duda*, 133 F.3d at 1061 (citing 105 ILCS 5/10-20.5). In *Duda*, the Seventh Circuit held that "[n]othing in the School Code allows us to infer that a superintendent or principal has been delegated policymaking authority with respect to personnel decisions." *Id.* If the highest official within the CPS does not have policymaking authority over personnel decisions, it follows that none of his subordinates do either. Simonsen's claims against these defendants in their official capacities are therefore dismissed.

### 2. Employee Liability under Title VII and the ADEA

In Counts 4-7, Simonsen alleges that each of these Board employees is liable for racial and sexual discrimination under Title VII, 42 U.S.C. § 2000e et *seq*, while in Count 10, Simonsen charges

that each is liable for age discrimination under the ADEA, 29 U.S.C. § 621 et *seq*. Because employees are not proper defendants under either Title VII or the ADEA, we dismiss each of these counts.

Title VII imposes liability on employers for discriminating against any individual on account of his race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). Although "employer" is defined to include an employer's agents, 42 U.S.C. § 2000e(b), the Seventh Circuit has held that agents are not individually liable under Title VII. *See Williams v. Banning*, 72 F.3d 552, 553 (7th Cir. 1995). The fact that agents are included in the definition of employer "is simply a statutory expression of traditional respondeat superior liability and imposes no individual liability on agents." *Id*. As employees or agents of the Board, these defendants cannot be held personally liable under Title VII. We therefore dismiss Counts 6 and 7 and those portions of Counts 4 and 5 which allege a violation of Title VII.

The ADEA imposes liability on employers for discriminating against any individual on account of his or her age. 29 U.S.C. § 623(a). Like Title VII, the ADEA defines "employer" to include an employer's agents. 29 U.S.C. § 630(b). Given the similarities between Title VII and the ADEA, "[c]ourts routinely apply arguments regarding individual liability to [both statutes] interchangeably." *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1280 (1995). Since agents are not individually liable under Title VII, the Seventh Circuit has suggested that agents are also not individually liable under the ADEA. *See Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 610 n.2 (7th Cir. 2001). We therefore hold that these defendants, as employees or agents of the Board, cannot be held personally liable under the ADEA, and we dismiss Count 10.

3. 42 U.S.C. §§ 1981, 1983, 1985, and 1986

Simonsen brings the remaining portions of his complaint pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1986 (the "Reconstruction Statutes"). Several defendants argue that they are absolutely immune from suit under these provisions. After addressing these claims, we consider whether any of the remaining counts have stated a claim against any of these defendants.

### a. Absolute Immunity

Ciesel and Bermejo argue that their role as prosecutors in Simonsen's dismissal hearing entitles them to absolute immunity from suit under the Reconstruction Statutes, while Nevins and Bailey claim that their respective roles as hearing officers in Simonsen's appeal of his fifteen day disciplinary suspension (hereinafter, suspension appeal) and his pre-dismissal suspension hearing similarly entitles them to absolute immunity from suit.[20] We find that Bermejo and Ciesel are entitled to absolute immunity from suit, but Nevins and Baily are not.

Although the text of the Reconstruction Statutes does not specifically provide for official immunity, the Supreme Court has long recognized that state judges and prosecutors are absolutely immune from suit for damages under § 1983 for actions taken in the course of their official duties.[21] *See Pierson v. Ray*, 386 U.S. 547 (1967) (state judges); Imbler *v. Pachtman*, 424 U.S. 411 (1976) (state criminal prosecutors). The Court has also extended absolute immunity to government officials outside of the criminal context who exercise judicial or prosecutorial functions. *See Butz v. Economou*, 438 U.S. 478, 515 (1978) (administrative law judges and agency attorneys who prosecute actions before them are absolutely immune from suit). Whether absolute immunity extends to the present factual circumstances thus depends on a functional analysis of defendants' respective roles – if their roles are functionally analogous to that of a judge or a prosecutor, then they are entitled to

---

[20]In their motions to dismiss, Nevins and Bailey each claim that they were "assigned to be a Hearing Officer at Simonsen's dismissal hearing." *See* Mot. to Dismiss (Nevins) at 7; Mot. to Dismiss (Bailey) at 7 (emphasis added). Simonsen, however, alleges that Nevins served as the hearing officer for the appeal of his fifteen-day disciplinary suspension, while Bailey served as the hearing officer in his pre-dismissal suspension hearing, and we must accept these allegations as true. Indeed, a transcript of this hearing provided by Bailey seems to confirm Simonsen's allegations. *See* Mot. to Dismiss (Bailey), Ex. 2. Moreover, exhibits attached to the complaint clearly show that Marvin Hill served as the hearing officer in Simonsen's dismissal hearing. We can only conclude that the Board attorneys representing Nevins and Bailey made a mistake in the course of simultaneously preparing their motions to dismiss.

[21]The Court has developed its immunity jurisprudence largely within the context of § 1983 claims. Circuit courts, though, have extended immunity to judges and prosecutors sued under the other Reconstruction Statutes as well. *See Scott v. Hayes*, 719 F.2d 1562 (11th Cir. 1983) (judge entitled to absolute immunity from suit under § 1981); *Byrne v. Kysar*, 347 F.2d 734 (7th Cir. 1965) (judge entitled to absolute immunity from suit under § 1985(3)); Peek v. Mitchell, 419 F.2d 575 (6th Cir. 1970) (prosecutor entitled to absolute immunity from suit under § 1986). Our immunity analysis therefore applies to all of Simonsen's counts brought pursuant to the Reconstruction Statutes.

absolute immunity for actions taken pursuant to those roles. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (describing functional approach). The defendants bear the burden of proving that their roles in this matter warrant absolute immunity. Burns v. Reed, 500 U.S. 478, 486 (1991).

### (1) Bermejo and Ciesel

Bermejo and Ciesel prosecuted Simonsen's dismissal hearing. A dismissal hearing under the Illinois School Code substantially resembles an actual civil or criminal trial. *See* 105 Ill. Comp. Stat. Ann. 5/34-85 et *seq.* The hearing is conducted by an impartial hearing officer selected through a procedure designed to ensure his disinterestedness. The school superintendent bringing the dismissal charges is represented by attorneys (e.g., Bermejo and Ciesel) who present documentary and testimonial evidence to support the charges. The teacher has the right to be present at the hearing with counsel, to present defenses to the charges, to offer his own evidence and witnesses, and to cross-examine the superintendent's witnesses. The hearing officer is empowered to issue subpoenas to require the attendance of witnesses upon the request of the superintendent or the teacher. Testimony is taken under oath, and the hearing is transcribed. After the hearing has concluded, the hearing officer must issue a report detailing his findings of fact and his recommendation to the school superintendent. If he is terminated, the teacher may seek judicial review under Illinois' Administrative Review Law.

Bermejo and Ciesel's role in the dismissal hearing is functionally equivalent to that of a criminal prosecutor. Like criminal prosecutors, they must exercise discretion in deciding what evidence to present in the hearing, and they are entitled to absolute immunity for these choices. *See Imbler*, 424 U.S. at 421-31 (state criminal prosecutors absolutely immune from suit for their actions in state criminal proceedings); Butz, 438 U.S. at 516-17 (agency attorneys absolutely immune from suit for their actions in agency hearings). If they lacked such immunity, they might hesitate to present relevant evidence to hearing officers. *See Imbler*, 424 U.S. at 426; Butz, 438 U.S. at 517. Hearing officers, however, need all relevant evidence, for they "can act in the public interest only if they can adjudicate on the basis of a complete record." B*utz*, 438 U.S. at 517. Furthermore, as with a criminal trial or administrative hearing, the nature of the dismissal hearing – the impartiality of the hearing officer, the adversary nature

of the proceedings, and the correctability of error on appeal – suggests that "there is a less pressing need for individual suits to correct constitutional error." *Id.* at 512. Finally, the fact that they are subject to "professional discipline by an association of [their] peers" provides an additional check on any potential excessive prosecutorial zeal. *See Imbler*, 424 U.S. at 429. We therefore hold that Bermejo and Ciesel are absolutely immune from suit for damages under the Reconstruction Statutes for any actions taken pursuant to their role as prosecutors in the dismissal hearing.

Given their role in this matter, absolute immunity shields Bermejo and Ciesel from *all* of Simonsen's claims under the Reconstruction Statutes. Nowhere in the complaint does Simonsen allege any involvement by them in this matter beyond their role as prosecutors in the dismissal hearing. Simonsen claims only that they "knew or should have known that false testimony under oath [during the dismissal hearing] was illegal and took no corrective action," Compl. ¶ 73 (emphasis removed), and that Bermejo "gave false information to the Hearing Official." Compl. ¶ 75. Since Simonsen's claims under the Reconstruction Statutes derive only from actions taken by Bermejo and Ciesel in their role as prosecutors in the dismissal hearing, they are entitled to absolute immunity from suit for all of these claims. Therefore, with respect to Bermejo and Ciesel, we dismiss Counts 1, 2, 3, 8, and 9 in their entirety and Count 4 to the extent that it alleges a violation of §§ 1981 and 1983. Since no viable counts remain against either Bermejo or Ciesel, they are dismissed as defendants in this action.

### (2) Nevins and Bailey

Nevins and Bailey assert that their status as "hearing officers" in Simonsen's suspension appeal and pre-dismissal suspension hearing entitles them to absolute immunity from suit. Absolute immunity, however, "flows not from rank or title . . . but from the nature of the responsibilities of the individual official." *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985). In order to decide whether Nevins and Bailey are in fact entitled to absolute judicial immunity, we must determine whether their roles in the suspension appeal and pre-dismissal suspension hearing were functionally analogous to that of a judge. Since we cannot determine from the complaint the exact nature of their roles in these hearings, we cannot decide at this time whether they are entitled to absolute immunity from suit.

### b. Failure to State a Claim

We now turn to the remaining counts of the complaint to determine whether they state a claim upon which relief can be granted against any of the remaining defendants (Gearring, Nevins, Bailey, Johnson, and Rodriguez).

#### (1) Count 1

Count 1 alleges that the procedures surrounding Simonsen's two unpaid suspensions and dismissal deprived him of property without due process of law. To state a due process claim under § 1983,[22] a plaintiff must allege that a state actor[23] deprived him of a protected property interest[24] without certain procedural protections. *See Doherty*, 75 F.3d at 322. For a tenured public employee, due process prior to an employment deprivation generally requires that the employee be given oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity to tell his side of the story, either in person or in writing. *Loudermill*, 470 U.S. at 546. Simonsen claims that his suspension and dismissal hearings were all constitutionally inadequate under this standard. Moreover, he alleges that the "[i]ndividual defendants . . . in their individual capacities . . . willfully performed [and] knowingly aided in the deprivation of [his] property rights." Compl. ¶ 21. We now turn to his specific allegations.

Simonsen first challenges the September 1999 hearing regarding his appeal of the fifteen day suspension imposed by Gearring. Under the Board's disciplinary procedures, a teacher facing a fifteen day suspension is entitled to appeal his or her suspension to the Regional Education Officer. *See* Compl. Ex. 2 at 3 (Chicago School Reform Board of Trustees, Personnel Policy). Simonsen received a hearing before Nevins, an employee of the Bureau of Labor and Employee Relations of the CPS, who forwarded the hearing record to Ponce, the Chief Human Resources Officer of the CPS and Simonsen's

---

[22]Although Simonsen brings this count pursuant to both §§ 1981 and 1983, a due process violation under § 1983 is the essence of Count 1.

[23]The defendants do not dispute that they acted under color of state law.

[24]The defendants apparently concede that Simonsen's suspensions and dismissal deprived him of a protected property interest.

Regional Education Officer designee. See Compl. Ex. 4 at 2 (Letter from Ponce to Simonsen). Ponce then informed Simonsen that, "[b]ased on the results of the [hearing] held on September 2, 1999 . . . , I have decided to suspend you for fifteen (15) days." Id. With no further recourse under the disciplinary policy, Simonsen served the suspension.

Simonsen does not allege that the procedures used in this hearing violated due process standards. Rather, he claims that this hearing was a "sham" because the decision to suspend him had already been made by Ponce. See Compl. ¶¶ 34-37. This allegation is sufficient to state a procedural due process claim against Ponce. See Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 503 (7th Cir. 1999) (holding that "sham procedures do not satisfy due process"). If Ponce made the suspension decision before he received Nevins' report from the hearing, he may be responsible for violating Simonsen's right to due process. However, neither Nevins nor any other defendant can be held responsible for these alleged violations of Simonsen's due process rights. Simonsen, alleging that "Gearring gave false testimony which Nevins elected to believe without any effort to seek the truth," Compl. ¶ 37, apparently believes that Nevins was biased against him. But even if she was biased, she cannot be held liable for violating Simonsen's due process rights – her alleged bias during the hearing is immaterial given Simonsen's charge that Ponce had made the decision to uphold the suspension before the hearing had even taken place. Moreover, since the complaint alleges that only Ponce exercised authority over the outcome of this hearing, none of the remaining defendants are liable for the alleged deprivation of Simonsen's right to due process. Therefore, with respect to his September 1999 hearing, Simonsen has failed to state a claim against any of these defendants.

Second, Simonsen claims that the November 1999 pre-dismissal suspension hearing deprived him of property without due process of law. Although he did receive a hearing before Bailey, an employee of the Bureau of Labor and Employee Relations of the CPS, he claims that the dismissal charges were not explained to him, that no evidence for the charges was presented, that he was not allowed to present a defense, that Bailey was biased against him, that the hearing was a sham, and that the Board knew about these violations but chose to do nothing. See Compl. ¶¶ 46-50, 54. Even if all of these allegations are true, we cannot allow these claims to proceed. Simonsen's pre-dismissal

suspension hearing, no matter how flawed, was followed by a full evidentiary dismissal hearing, at which an independent state hearing officer determined that the Board's charges were true and recommended Simonsen's dismissal. Now that the Board has accepted the hearing officer's recommendation and terminated Simonsen, the only remedy he could pursue for procedural errors during his pre-dismissal suspension hearing is nominal damages, but he has not sought such damages. We therefore dismiss these claims as moot. See generally Prato, 202 F.3d at 274 (unpublished opinion).

Third, Simonsen vaguely contends that his dismissal hearing violated his due process rights. As we noted above, the Seventh Circuit has held that in order to charge a school board with a "random and unauthorized" employment termination, a plaintiff must demonstrate that state post-deprivation remedies are constitutionally inadequate. See Strasburger, 143 F.3d at 358. Since Simonsen cannot allege that his post-deprivation remedies are inadequate, we dismiss his claims with regard to his dismissal hearing.

### (2) Count 2

Count 2 alleges that the defendants deprived Simonsen of his liberty interest in employment in his chosen profession by taking actions which led to his wrongful suspension and dismissal. Simonsen claims that his suspension and dismissal damaged his reputation and made it impossible for him to continue as a teacher. Even if we accept as true that Simonsen was wrongly suspended and dismissed and that all of these defendants are in some way responsible, we find that Simonsen has failed to state a claim for deprivation of a liberty interest against any of the remaining defendants.

A claim that an employee's liberty to pursue the occupation of his choice requires that the employee be stigmatized by public disclosure of adverse information and that the employee suffer a tangible loss of other employment opportunities as a result of the public disclosure. Strasburger, 143 F.3d at 356. The stigmatizing information at issue here concerned charges of incompetence brought against Simonsen, but public statements regarding "charges of professional incompetence do not impose the sort of stigma that actually infringes an employee's liberty interest to pursue an occupation." Lashbrook, 65 F.3d at 1348-49. Thus, even if the complaint alleged that the defendants made public

21

statements about Simonsen's incompetence as a teacher – which it does not – we could not accept these statements as sufficiently stigmatizing to maintain this cause of action. We therefore dismiss Count 2 as to each of the remaining defendants.

### (3) Count 3

Count 3 alleges that the defendants singled out Simonsen for discipline without cause in violation of his right to equal protection.[25] The Supreme Court has recognized claims for violations of the Equal Protection Clause by a "class of one." *Village of Willowbrook*, 528 U.S. at 562. In order to state a claim as a class of one, Simonsen must contend that the defendants intentionally treated him differently from similarly situated individuals for no legitimate reason. Id. at 564.

Simonsen specifically alleges that Gearring, the principal at Hendricks Academy, singled him out for discipline. Elsewhere in the complaint, however, he indicates that many teachers have left Hendricks Academy because of the actions of Gearring. *See* Compl. ¶ 125 (noting that "[s]ince 1996 the majority of employees at Hendricks have transferred due to the know [sic] abuse of Defendant Gearring"). This admission that he was not treated differently from other similarly situated teachers pleads him out of an equal protection claim under a "class of one" theory. *See Early*, 959 F.2d at 79 (a plaintiff may "plead himself out" of a cause of action by alleging facts which show that he is not entitled to judgment).

Simonsen, however, may still be able to make out a § 1983 equal protection claim under a different legal theory. *See Kennedy*, 187 F.3d at 695 (a complaint states a claim even if brought under the wrong legal theory if relief is possible under any set of facts consistent with the allegations). In Counts 5 and 6, he alleged that the defendants discriminated against him on the basis of his race and sex in violation of Title VII. We dismissed these counts because the defendants, as employees, could not be held liable under this statute. From these counts, however, it is clear that Simonsen intended

---

[25]Although Simonsen brings this count pursuant to both §§ 1981 and 1983, an equal protection violation under § 1983 is the essence of Count 3.

to bring charges of racial and sexual discrimination against all of the individual defendants.[26]  Reading the complaint as a whole, we find that the defendants were placed on notice of the racial and sexual discrimination claims.  See Scott, 195 F.3d at 952 ("Whether a complaint provides notice . . . is determined by looking at the complaint as a whole").  Therefore, consistent with our obligation to read this pro se complaint generously, we will allow Simonsen to bring equal protection claims for racial and sexual discrimination under Count 3.  The equal protection charge in Count 5 is now redundant, and since there remain no viable portions of this count against any remaining defendant, Count 5 is dismissed in its entirety.

Defendants maintain that Simonsen has failed to state a claim for racial or sexual discrimination because he has failed to allege specific factual instances of discriminatory conduct.  While the failure to allege any facts may under certain circumstances justify dismissal, this is not such a circumstance. In Count 1, Simonsen alleged facts regarding the actions of each individual defendant.  Although many of these actions appear innocuous, if he can show that the defendants took these actions against him on the basis of his race or sex, he will have stated a valid § 1983 claim for racial or sexual discrimination under an equal protection theory. See, e.g., Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998) (suggesting that all a racial discrimination complaint need allege is "I was turned down for a job because of my race").  Therefore, reading the complaint generously, we find that this count has stated a claim for racial and sexual discrimination against the defendants.


(4)  Count 4

Count 4 alleges in part that defendants retaliated against Simonsen for engaging in protected First Amendment activity.  Simonsen specifically alleges that Gearring pursued false disciplinary charges against him in retaliation for the low rating she received from the Hendricks Local School Council, of which he was a member. See Compl. ¶ 102.  This allegation, if proven, is sufficient to state a claim for First Amendment retaliation against Gearring.

---

[26]Indeed, Count 5 contains an equal protection allegation, although Count 6 does not.

Simonsen, however, fails to state a claim against any of the other defendants. This count specifically names only the Board and Gearring, failing to mention any other defendants even in general terms. Moreover, this count fails to apprise the other defendants of the basis for the alleged retaliation. Although the federal rules permit notice pleading, a pleading must contain sufficient facts to allow the defendants to understand the gravamen of the complaint. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999). Because it fails to indicate what the other defendants were allegedly retaliating for, Count 4 is dismissed with respect to each of the individual defendants except Gearring. *See Scott*, 195 F.3d at 952 (upholding dismissal where lack of "minimum factual allegations . . . failed to provide minimum notice of the gravamen of the plaintiff's claim").

### (5) Count 8

Count 8, brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1985, alleges that defendants conspired to deprive Simonsen of his rights by causing "unlawful, adverse employment actions which caused great harm and suffering." Compl. ¶ 130. As employees of the Board, however, the remaining defendants cannot be held liable for such a conspiracy under § 1985. Under the intracorporate conspiracy doctrine, employees and agents of a public school board acting within the scope of their employment are members of the same collective entity and thus are not individuals who may form a conspiracy in violation of § 1985. *See Wright v. Ill. Dept. of Children and Family Services*, 40 F.3d 1492, 1508 (7th Cir. 1994). We have held above that the same reasoning extends to conspiracy claims brought pursuant to §§ 1981 and 1983. We therefore dismiss Count 8 in its entirety.

### (6) Count 9

Count 9, brought pursuant to 42 U.S.C. § 1986, alleges that these defendants were aware of the conspiracy against Simonsen but failed to prevent it. Under § 1986, any individual who knows of a conspiracy prohibited under § 1985, and who has the power to stop or correct it and fails to do so, is liable for any resulting damages. Since we have found that Simonsen cannot maintain a § 1985 claim against any of the remaining defendants, we must dismiss this count as well.

## D.  Simonsen's Motion for Default Judgment

Simonsen has moved under Federal Rule of Civil Procedure 55(b)(2) for default judgment against both Vallas and Ponce.  Before a court can enter a default judgment, however, it must be satisfied that it has personal jurisdiction over the defendants.  *See* Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal *Practice and Procedure: Civil 3d* § 2682 at 14 (1998).  Accordingly, a plaintiff who seeks default judgment must "show the fact of default by evidence, usually by affidavit, which shows the timing of service of the summons and complaint . . . ."  10 James Wm. Moore et al., M*oore's Federal Practice* § 55.11[3][b] (3d ed. 2000).  Simonsen's motions do not include any evidence demonstrating that Vallas or Ponce have been served process.  Because Simonsen has failed to demonstrate that this court has personal jurisdiction over either Vallas or Ponce, his motions for default judgment are denied.

## CONCLUSION

We grant the Board's motion to dismiss Counts 2, 3, 7, 8, and 9 of the complaint and we deny the Board's motion to dismiss Count 4.  We strike that portion of Count 1 which alleges that the Board committed due process violations with respect to Simonsen's pre-dismissal suspension hearing and dismissal hearing, but Simonsen may proceed against the Board with respect to his fifteen day suspension.  We strike Simonsen's claim for punitive damages against the Board, and we deny his request for a preliminary injunction.

We grant Bermejo and Ciesel's motions to dismiss the complaint in its entirety.  We dismiss all counts against Gearring, Nevins, Bailey, Johnson, and Rodriguez's except Count 3's racial and sexual discrimination claim against each defendant and Count 4's First Amendment retaliation claim against Gearring.  Finally, we deny Simonsen's motions for default judgment against Vallas and Ponce.  It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated 2/13/02